# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 48268

|  |  |
|---|---|
| REPRESENTATIVE SCOTT BEDKE, in his official capacity as SPEAKER OF THE HOUSE OF REPRESENTATIVES, and SENATOR CHUCK WINDER, in his official capacity as SENATE PRESIDENT PRO TEMPORE, | Boise, January 2021 Term |
| Plaintiffs-Respondents, | Opinion Filed: January 27, 2021 |
| v. | Melanie Gagnepain, Clerk |
| JULIE ELLSWORTH, in her official capacity as the IDAHO STATE TREASURER, | |
| Defendant-Appellant. | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Nancy Baskin, District Judge.

The decision of the district court with regard to the interpretation of Idaho Code section 67-1602(3) is <u>affirmed</u>.

Hopkins Rodin Crockett Hansen & Hoopes, PLLC, Boise, for Appellant. C. Timothy Hopkins argued.

Holland & Hart LLP, Boise, for Respondents. B. Newel Squyres argued.

―――――――――――――

STEGNER, Justice.

This appeal arises out of a dispute between the presiding officers of the Idaho Legislature and the Idaho State Treasurer. The Speaker of the Idaho House of Representatives, Scott Bedke, and the President Pro Tempore of the Idaho Senate, Brent Hill,[1] seek to evict Treasurer Julie Ellsworth from her current office on the first floor of the Idaho State Capitol building pursuant to Idaho Code section 67-1602(3).

―――――――――――――

[1] During the pendency of this appeal, Senator Chuck Winder succeeded Senator Brent Hill as the President Pro Tempore of the Idaho Senate. This opinion will continue to identify Senator Hill as a litigant because it was his decision, in conjunction with Representative Scott Bedke, which gave rise to this litigation.

1

The parties disagree on the meaning of Idaho Code section 67-1602(3), which authorizes the legislative branch of government to determine the use of and to allocate space on the first floor of the Idaho State Capitol. The office of the Idaho State Treasurer has historically been located in the southeast quadrant of the first floor of the Capitol Building. However, in 2019, Bedke and Hill, as the presiding officers of the Idaho House and Senate respectively, decided to evict Ellsworth and her staff from the Treasurer's historic office, citing the need for more legislative office space as their justification. Ellsworth refused to vacate her office, relying on a purported agreement made between the then-Governor, C.L. "Butch" Otter, and the leadership of the Idaho Legislature in 2007. This suit, brought by Bedke and Hill, followed.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background.

On March 24, 1998, the Idaho Legislature enacted Idaho Code section 67-1602. *See* H.B. 690, 54th Leg., 2nd Reg. Sess. (Idaho 1998). House Bill 690, which created section 67-1602, stated that its purpose, among others, was "[t]o establish a statute to comprehensively govern all aspects of the use, control, security, operation, and maintenance of the capitol building and its grounds." *Id.*

Section 67-1602 as enacted provided:

IDAHO STATE CAPITOL—ALLOCATION AND CONTROL OF SPACE. The space within the interior of the capitol building shall be allocated and controlled as follows:

(1) Public space. The interior within the rotunda, the hallways on the first and second floors, the restrooms located adjacent thereto, the elevators, the stairways between the first, second, third and fourth floors (excepting the interior stairways between the third and fourth floors within the legislative chambers), shall be space within the capitol building open to the public ("public space"). Subject to this chapter, the director of the department of administration shall maintain all public space.

(2) Executive department. *The governor shall determine the use and allocate the space within the first and second floors.* The director of the department of administration shall maintain such space.

(3) Legislative department. *The legislative department shall determine the use of the space on the third and fourth floors as well as the basement.* All space within the third and fourth floors and the basement *shall be allocated by the presiding officers of the senate and house of representatives.* The presiding officers shall maintain such space and provide equipment and furniture thereto, provided

2

however, that the presiding officers may contract with the director of the department of administration to maintain such space and provide equipment and furniture thereto.

I.C. § 67-1602 (prior to the 2007 amendment) (italics added).

In 2006 and 2007, efforts began to renovate the Capitol building to include underground atrium wings. *See Restoration*, IDAHO CAPITOL COMMISSION, https://capitolcommission.idaho. gov/restoration/. In 2006, the Legislature passed House Concurrent Resolution No. 47, which approved the construction of two-story underground wings on either side of the Capitol building for use by the Legislature in conducting its business. *See* H.R. Con. Res. 47, 58th Leg., 2nd Reg. Sess. (Idaho 2006). Then-Governor Otter did not approve the two-story expansion, so a compromise was reached in which one-story underground wings would be constructed on either side of the Capitol building for legislative use and the Legislature would also be given control over the first, above-ground floor of the Capitol, which had previously been allocated by the Executive department.

In order to implement this compromise, Idaho Code section 67-1602 was amended by House Bill 218 in March of 2007. H.B. 218, 59th Leg., 1st Reg. Sess. (Idaho 2007). As amended, section 67-1602 delegated control of the first floor of the Capitol to the Legislature as follows:

> (2) Executive department. The governor shall determine the use and allocate the space within the ~~first and~~ second floors. The director of the department of administration shall maintain such space.

> (3) Legislative department. The legislative department shall determine the use of the space on the **first,** third and fourth floors as well as the basement**, which basement shall include the underground atrium wings.** All space within the **first,** third and fourth floors and the basement shall be allocated by the presiding officers of the senate and house of representatives. The presiding officers shall maintain such space and provide equipment and furniture thereto, provided however, that the presiding officers may contract with the director of the department of administration to maintain such space and provide equipment and furniture thereto.

H.B. 218, 59th Leg., 1st Reg. Sess. (Idaho 2007) (deleted text indicated with a strikethrough, added text indicated in bold). House Bill 218 was passed by the Idaho House on March 5, 2007. *Id.*

Prior to the passage of House Bill 218 by the Senate, a purported agreement was reached between the Legislature's presiding officers and Otter to allow the Treasurer's office to remain on the first floor of the Capitol. This agreement was said to have been reached through a series of letters between Otter and then-President Pro Tempore of the Idaho Senate, Robert Geddes, and

then-Speaker of the Idaho House, Lawrence Denney. In a letter to Otter dated March 5, 2007, Geddes acknowledged the historical significance of the "Treasurer's Office preservation area, which includes the Treasurer's Office and the vault area," and stated that the Legislature would "preserve that . . . for the State Treasurer as recommended by the Capitol Commission." However, Geddes further stated that the "balance of the Capitol's southeast quadrangle, which is currently occupied by the Treasurer for the banking function, will also be assigned to the Treasurer on a temporary basis, should he choose to remain on the first floor." Geddes reiterated in the letter that the use by the Treasurer for the banking function was "temporary."

In a purported response to Geddes' March 5 letter, the record contains an unsigned draft letter from Otter dated "March 2007." In this unsigned letter, Otter stated that his understanding of the agreement was that the Treasurer would continue to occupy both the office and vault area as well as office space used for the banking function. The letter concluded, "the State Treasurer shall occupy all the office space located on the south side of the east wing of the first floor. The use of the words 'temporary basis' was not and will not be a part of any agreement." Otter submitted an affidavit in this case stating that although his office had been unable to locate a signed copy of the letter, he had in fact signed and sent a "substantially identical" letter on or between March 5 and March 8, 2007.

In an apparent response to that letter from Otter, Geddes sent a letter dated March 9, 2007:

It is our understanding of the agreement reached within the compromise framework for the Capitol Master Plan and adopted by the Capitol Commission that the aforementioned office space described above shall continue to be assigned to the Treasurer, should he choose to remain on the first floor following the Capitol renovation.

Should Treasurer Crane choose to vacate the space at some time subsequent to renovations, it is the Legislature's intent to move the Office of Performance Evaluations into those [sic] office.

On March 9, 2007, a Senate State Affairs Committee meeting took place to discuss House Bill 218, at which Geddes informed the committee that there had been "some concessions, with regard to the space that is currently occupied by the Treasurer on the first floor. That agreement has been negotiated with the Governor and the banking aspects of the Treasurer's Office will remain on the Southeast corner of the first floor." 2007 Senate State Affairs Committee Minutes, IDAHO LEGISLATURE 1, 136 (March 9, 2007), available at https://legislature.idaho.gov/ sessioninfo/2007/standingcommittees/SSTA/. The Idaho Senate then passed House Bill 218 on

4

March 14, 2007. H.B. 218, 59th Leg., 1st Reg. Sess. (Idaho 2007). House Bill 218 became law on March 22, 2007; however, it did so without Otter's signature.

On March 28, 2007, the Idaho State Capitol Commission convened a meeting which dealt with this issue. In discussing updates to the Capitol Master Plan, the Commission noted that the "entire first floor ha[d] been allocated to the Legislative Services Office (LSO), with the exception of the southeast corner, in [sic] which the State Treasurer will continue to occupy." The Capitol renovation was completed in 2010, and then-Treasurer Ron Crane moved back into the historic first floor office. Pursuant to the concessions discussed above, the Treasurer's Office returned to the first floor of the Capitol building.

Crane served as the Idaho State Treasurer from 1999 to 2019, when he was succeeded by Ellsworth. In the interim, Bedke succeeded Denney as the Speaker of the Idaho House and Hill succeeded Geddes as the President Pro Tempore of the Idaho Senate. In early 2018, before Crane's tenure ended, Speaker Bedke and then-Treasurer Crane exchanged letters regarding the allocation of the first-floor space occupied by the Treasurer's office and its banking functions. On January 31, 2018, Bedke sent a letter to Crane informing him that the Legislature would be "reallocating the Treasurer's Office first floor space to legislative space." Bedke stated that the "legislature temporarily allocated first-floor space to the State Treasurer, but that allocation was temporary and meant to last only until the Legislature needed more space." Bedke further noted that he had waited until the end of Crane's tenure to reallocate the space "as a courtesy."

In a letter dated February 8, 2018, Crane urged Bedke to reconsider the decision to reallocate the space due to the historical significance of the location of the Treasurer's Office. Bedke responded on February 21, 2018, reiterating that it was the "intent of the Legislature to occupy all of the space on the first floor." In a response dated March 29, 2018, Crane expressed his displeasure with the decision: "[I]t is extremely regretful you are choosing to break an agreement reached eleven years ago between the executive and legislative branches of state government relative to space allocation on the first floor." Crane further explained that the 2007 agreement was intended to preserve the location of the Treasurer's office on the first floor permanently.

In January 2019, the Idaho Legislature passed House Bill 251, amending Idaho Code section 67-1204 by removing the requirement that state money in the custody of the Treasurer be kept in the vault located in the Capitol building. *See* H.B. 251, 65th Leg., 1st Reg. Sess. (Idaho

2019). As amended, section 67-1204 now requires that state money in the custody of the Treasurer must be kept "in a secure location in the office of the state treasurer," as opposed to the previous requirement that state money be kept in the "vault and safe as provided for that purpose in the capitol building." *See* I.C. § 16-1204(1). This amendment would effectively permit the Treasurer's Office to be housed outside of the Capitol building.

No further action was taken to move the Treasurer's office elsewhere until 2019, following Ellsworth's replacement of Crane as Treasurer. On March 4, 2019, five members of the House of Representatives sent a letter to Ellsworth, informing her that the Legislature would be reallocating the Treasurer's first-floor space for legislative use. The letter outlined the legal basis for this reallocation, describing the effect of Idaho Code section 67-1602(3) regarding the relocation of the Treasurer's office. The letter concluded by asking that Ellsworth submit a relocation plan by April 1, 2019, to facilitate the transition. Ellsworth did not respond to the letter.

On April 2, 2019, Bedke and Hill sent another letter to Ellsworth acknowledging Ellsworth's failure to respond and proposing that the parties attempt mediation to resolve the dispute and to "provide non-binding legal analysis on the controlling law in this dispute, primarily I.C. § 67-1602(3)." The letter further stated that if Ellsworth did not agree to mediation, Bedke and Hill would bring a declaratory judgment action. Again, Ellsworth did not respond.

**B. Procedural History.**

On June 21, 2019, Bedke and Hill, acting in their official capacities as the presiding officers of the two houses of the Idaho Legislature, filed a declaratory judgment action against Ellsworth. Bedke and Hill asked the district court to declare that:

a. the legislative department has the sole authority under I.C. § 67-1602(3) to determine the use of the space on the first floor of the Capitol;

b. the legislative department, pursuant to its authority under I.C. § 67-1602(3), has the right to determine the use of its space currently occupied by the Treasurer on the first floor of the Capitol; and

c. the Treasurer must comply with the legislative department's determination of the use of the first floor of the Capitol under I.C. § 67-1602(3).

In response to the complaint, Ellsworth filed an I.R.C.P. 12(b)(6) motion to dismiss, which the district court denied. Following the district court's denial of her motion to dismiss, Ellsworth moved for permission to appeal the interlocutory order pursuant to Idaho Appellate Rule 12, which the district court also denied.

The parties then filed cross-motions for summary judgment. Ellsworth argued that section

6

67-1602 was unambiguous and contained two requirements: "First, the Legislative Department must 'determine the use' of space by taking some sort of official action in the House of Representatives and the Senate[;] Second, the presiding officers of the House of Representatives and the Senate must 'allocate' the space according to the Legislative Department's determination."

Alternatively, Ellsworth argued that if the statute was ambiguous, then the court should consider legislative history in construing the statute. Ellsworth asserted that the Idaho Capitol Commission was created to "oversee, among other things, the use and allocation of space in the Capitol Building, and the Commission has functioned and exercised that authority, subject to legislative review, every year since its creation." Therefore, Ellsworth argued, in discussing the location of the Treasurer's office in meeting minutes from March 28, 2007, the Capitol Commission determined that the Treasurer's office would remain in its historic location permanently.

Ellsworth continued to argue that she was entitled to the office space on the first floor of the Capitol building based on the agreement between the then-Governor and the then-presiding officers of the Legislature. Finally, Ellsworth argued that the doctrine of quasi-estoppel operated to prevent the plaintiffs from asserting a position inconsistent with the position taken by the presiding officers in 2007 when the purported agreement was reached allowing the Treasurer to remain on the first floor.

In their motion for summary judgment, Bedke and Hill argued that Idaho Code section 67-1602(3) unambiguously delegates power to the "presiding officers," the Speaker of the House and President Pro Tempore of the Senate, to allocate the space on the first floor of the Capitol. Bedke and Hill argued that no formal action by the Legislature was required for them to reallocate the space on the first floor because the statute is "self-effectuating," delegating to the presiding officers authority to act. Bedke and Hill also asserted that even if the district court found section 67-1602(3) to be ambiguous, the legislative history and public policy would still affirm their ability to determine the use of the space.

The district court entered its memorandum decision and order on the parties' cross-motions for summary judgment on July 20, 2020. The district court denied Ellsworth's motion and granted the motion brought by Bedke and Hill. The district court entered its judgment on July 23, 2020, declaring:

1. The legislative department has the sole authority under I.C. § 67-1602(3) to

determine the use of the space on the first floor of the Capitol and this means the legislative department has the sole authority to control such space. No further action needs to be taken by the legislative department to exercise its determination and control over the First Floor.

2. The legislative department, pursuant to its authority under I.C. § 67-1602(3), has the delegated [] authority to determine the specific allocation of the first floor space it controls to its presiding officers. The presiding officers have authority to allocate all the space on the first floor including the space currently occupied by the Treasurer on the first floor of the Capitol.

3. The Treasurer must comply with the legislative department's determination of the allocation of the first floor space of the Capitol under I.C. § 67-1602(3) as determined by its presiding officers.

Ellsworth timely appealed.

## II. STANDARD OF REVIEW

"This Court reviews de novo both Rule 12(b)(6) dismissal orders and Rule 56 summary judgment grants." *Paslay v. A&B Irrigation Dist.*, 162 Idaho 866, 868, 406 P.3d 878, 880 (2017).

> "When considering a 12(b)(6) motion, we look only to the pleadings to determine whether a claim for relief has been stated." *Allied Bail Bonds, Inc. v. Cnty. of Kootenai*, 151 Idaho 405, 409, 258 P.3d 340, 344 (2011). "A motion to dismiss for failure to state a claim should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle [the plaintiff] to relief.'" *Taylor v. Maile*, 142 Idaho 253, 257, 127 P.3d 156, 160 (2005) (quoting *Gardner v. Hollifield*, 96 Idaho 609, 611, 533 P.2d 730, 732 (1975)). On review, this Court draws all reasonable inferences in favor of the non-moving party.

*Colafranceschi v. Briley*, 159 Idaho 31, 34, 355 P.3d 1261, 1264 (2015).

"The fact that the parties have filed cross-motions for summary judgment does not change the applicable standard of review, and this Court must evaluate each party's motion on its own merits." *Potlatch Educ. Ass'n v. Potlatch Sch. Dist. No. 285*, 148 Idaho 630, 633, 226 P.3d 1277, 1280 (2010) (quoting *Intermountain Forest Mgmt., Inc. v. La. Pac. Corp.*, 136 Idaho 233, 235, 31 P.3d 921, 923 (2001)).

> Where the parties have filed cross-motions for summary judgment relying on the same facts, issues and theories, the parties effectively stipulate that there is no genuine issue of material fact that would preclude the district court from entering summary judgment. *Davis v. Peacock*, 133 Idaho 637, 640, 991 P.2d 362, 365 (1999) (citations omitted). However, the mere fact that both parties move for summary judgment does not in and of itself establish that there is no genuine issue of material fact.

*Intermountain Forest Mgmt., Inc.*, 136 Idaho at 235, 31 P.3d at 923.

"Summary judgment is appropriate if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Nettleton v. Canyon Outdoor Media, LLC*, 163 Idaho 70, 72, 408 P.3d 68, 70 (2017) (citing I.R.C.P. 56(a)). "All disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party." *Venable v. Internet Auto Rent & Sales, Inc.*, 156 Idaho 574, 578, 329 P.3d 356, 360 (2014) (quoting *Oats v. Nissan Motor Corp. in U.S.A.*, 126 Idaho 162, 164, 879 P.2d 1095, 1097 (1994)). "The moving party carries the burden of proving the absence of a genuine issue of material fact." *Nettleton*, 163 Idaho at 73, 408 P.3d at 71.

"The interpretation of a statute is a question of law this Court reviews de novo." *Nelson v. Evans*, 166 Idaho 815, 464 P.3d 301, 306 (2020) (quoting *State v. Smalley,* 164 Idaho 780, 783, 435 P.3d 1100, 1103 (2019)).

"Justiciability challenges are subject to Idaho Rule of Civil Procedure 12(b)(1) since they implicate jurisdiction." *Tucker v. State*, 162 Idaho 11, 18, 394 P.3d 54, 61 (2017). "Jurisdictional issues, like standing, are questions of law, over which this Court exercises free review." *Frantz v. Osborn*, 167 Idaho 176, 468 P.3d 306, 309 (2020) (quoting *In re Jerome Cnty. Bd. of Comm'rs*, 153 Idaho 298, 308, 281 P.3d 1076, 1086 (2012)).

### III. ANALYSIS

**A. The political question doctrine does not preclude this Court from reaching the merits of this dispute.**

In response to the complaint brought by Bedke and Hill in which they sought a declaratory judgment, Ellsworth filed a Rule 12(b)(6) motion to dismiss. Ellsworth argued, among other things, that the complaint should be dismissed because it raised a political question "not susceptible to judicial decision." In support of her argument, Ellsworth relied on *Miles v. Idaho Power Company*, 116 Idaho 635, 778 P.2d 757 (1989), and *Troutner v. Kempthorne*, 142 Idaho 389, 128 P.3d 926 (2006), to argue that the decision to allocate the first floor of the Capitol building between the executive and legislative branches of the Idaho government is a political question because it requires the court to "second guess the merits of the [purported] agreement." *Miles*, 116 Idaho at 640, 778 P.2d at 762).

In denying Ellsworth's motion to dismiss, the district court determined that the issue before it did not raise a political question:

9

> This [c]ourt has not been asked to override [Bedke and Hill's] discretionary decision regarding where to locate the Treasurer's office. The [c]ourt has also not been asked to decide the policy question of whether the Treasurer's office should or should not be moved from its current location on the first floor of the Capitol. . . . Instead, this [c]ourt has been asked to interpret a statute and determine its constitutionality.

The district court also noted in its decision that the interpretation of a statute is a "familiar judicial exercise." *Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189, 196 (2012).

On appeal, Ellsworth argues that the district court erred when it found the political question doctrine inapplicable. Specifically, Ellsworth contends that, in Idaho, the political question doctrine is "more correctly viewed under the doctrine of separation of powers," and at the doctrine's core is "whether the Court, by entertaining review of a particular matter, would be substituting its judgment for that of another coordinate branch of government, when the matter was one properly entrusted to that other branch." *Troutner*, 142 Idaho at 393, 128 P.3d at 930.

Ellsworth asserts that "Idaho's constitutional framework demonstrates that the Governor and Legislature both have roles to play regarding the enactment of legislation." "A necessary part of these constitutionally vested powers," Ellsworth continues, "is the inherent ability of the Governor and the Legislature to negotiate and perhaps agree with each other on legislation and its effect." Ellsworth asserts that "this Court should not disturb this agreement reached between the Governor and the Legislature by deciding this case, because the case involved a political question, and doing so would violate the separation of powers between the three branches of government." In response, Bedke and Hill argue that the "proper interpretation of I.C. § 67-1602 is the only issue before this Court, and this Court has unquestioned authority to make this determination."

"Passing on the constitutionality of statutory enactments, even enactments with political overtones, is a fundamental responsibility of the judiciary, and has been so since *Marbury v. Madison*." *Miles*, 116 Idaho at 640, 778 P.2d at 762. Interpreting statutes is a fundamental responsibility of the judiciary.

As noted, Ellsworth relies on *Miles v. Idaho Power Company*, 116 Idaho 635, 778 P.2d 757 (1989), to support her argument. In *Miles*, an agreement was reached between Idaho Power and the State of Idaho regarding water rights to the Snake River. *Id.* at 637, 778 P.2d at 759. On appeal, the State argued that because the agreement had been "endorsed by the executive and legislative branches" of Idaho's government, it presented a political question improper for a judicial resolution. *Id.* at 639, 778 P.2d at 761. This Court noted that the political question doctrine

is more correctly viewed under the doctrine of separation of powers, which is embraced in art. 2, § 1 of the Idaho Constitution. The question is whether this Court, by entertaining review of a particular matter, would be substituting its judgment for that of another coordinate branch of government, when the matter was one properly entrusted to that other branch.

*Id.* This Court held that the subject of the water rights agreement was a political question that it could not review: "Determining how our scarce water resources will best serve the state, whether by increased agricultural use or increased power generation use, is a matter peculiarly within the legislative and executive branches." *Id.* at 640, 778 P.2d at 762.

The interpretation of Idaho Code section 67-1602(3) does not raise a political question. As noted above, "applying well-settled legal principles to an unsettled question of law . . . is a judicial function almost as old as our republic. Indeed, as Justice John Marshall observed . . . : 'It is emphatically the province and duty of the judicial department to say what the law is.'" *Nye v. Katsilometes*, 165 Idaho 455, 463, 447 P.3d 903, 911 (2019) (quoting *Marbury v. Madison*, 5 U.S. 137, 177 (1803)). Unlike the determination this Court faced in *Miles*, which would have required us to pass on the policy decisions of both the legislative and executive branches, here, Bedke and Hill simply seek a judicial determination of the meaning of a statute, namely, Idaho Code section 67-1602(3).

As a practical matter, two of the judiciary's co-equal sister branches of government, the legislative and the executive (in this case the Treasurer), are at loggerheads over their interpretation of a statute. We are simply being asked to interpret what was meant when Idaho Code section 67-1602(3) became law. We are not being asked to substitute our judgment for that of a co-equal branch of government. Rather, we are being asked to resolve a dispute between our co-equal sister branches. If we were to refrain from acting because of the political question doctrine, the dispute would literally be unresolvable. Fundamentally, this is not the type of issue the political question doctrine was intended to remove from judicial determination.

Ellsworth's assertion that a judicial decision is inappropriate considering an alleged agreement made between the 2007 presiding officers and the governor is not the question we are being asked to answer when we interpret the statute. While the purported agreement may be relevant to the ultimate resolution of this dispute, it does not bar this Court from the "familiar judicial exercise" of interpreting a statute. *See Zivotofsky*, 566 U.S. at 196. As a result of our analysis, we conclude that the dispute between the Legislature and the Treasurer does not present a political question which we should abstain from resolving.

**B. Bedke and Hill have standing to bring this action.**

Ellsworth also argued below that the complaint should be dismissed because Bedke and Hill lacked standing under the federal legislator standing doctrine. Specifically, Ellsworth argued that the legislators lacked standing because "no official action by the Idaho Legislature authorize[d] the filing of this declaratory action and [] no voting power or other legislative authority is involved or threatened[.]"

In denying Ellsworth's motion to dismiss, the district court preliminarily found that in order to determine the issues regarding justiciability, it had to first determine the meaning of Idaho Code section 67-1602(3). The district court found that section 67-1602(3) "clearly delegates the power to allocate the space at issue to [Bedke and Hill] acting in their official capacities." As a result, the district court determined that Bedke and Hill had standing to file suit.

On appeal, Ellsworth contends that the United States Supreme Court's decision in *Raines v. Byrd*, 521 U.S. 811 (1997), which addressed "legislative standing," precludes Bedke and Hill from bringing suit. Ellsworth contends that "Respondents are individual legislators who do not have a sufficient 'personal stake' or a sufficiently concrete injury to establish standing, absent an act of the Legislature as a whole authorizing this action."

In response, Bedke and Hill argue that they "have a direct stake in obtaining a judicial interpretation of the statute that confers upon them the power and duty to allocate space, and thus, they have standing to bring this action." Bedke and Hill further note that the present injury to them and the Legislature, caused by Ellsworth's refusal to vacate her first-floor office, is "hindering [House] members' abilities to perform their duties." Bedke and Hill state that "[a] judgment declaring that the Legislative Department determines the use of the first floor and that the Presiding Officers may allocate that space" will redress both the present and future harm caused by the Treasurer's refusal to vacate her Capitol office.

Bedke and Hill also argue that they have suffered an "institutional injury." *See Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*, 576 U.S. 787 (2015). In *Arizona State Legislature*, the United States Supreme Court determined that "an institutional plaintiff asserting an institutional injury" had standing to sue. 576 U.S. at 799. There, the Arizona Legislature sued the Arizona Independent Redistricting Commission alleging that a newly passed voter initiative would strip the legislature of its constitutional power to conduct legislative redistricting. *Id.* at 800. The United States Supreme Court held that because the voter initiative would "completely nullify"

12

any vote by the entire legislature, there was a sufficient injury alleged to confer standing on the Legislature. *Id.* at 801–02.

Bedke and Hill contend that, as the presiding officers, they "have been delegated the institutional authority to act on the Legislature's behalf in allocating space on the first floor of the Capitol." Ellsworth responds by again emphasizing the lack of a vote to bring suit by the Idaho Legislature. She contends that Bedke and Hill, acting as *individual* legislators who allege they have suffered an institutional injury, need approval from the Idaho Legislature to file suit.

> "Standing is a preliminary question to be determined by this Court before reaching the merits of the case." *Young v. City of Ketchum,* 137 Idaho 102, 104, 44 P.3d 1157, 1159 (2002). "The doctrine of standing focuses on the party seeking relief and not on the issues the party wishes to have adjudicated." *Miles v. Idaho Power Co.,* 116 Idaho 635, 641, 778 P.2d 757, 763 (1989). To satisfy the requirement of standing, "litigants generally must allege or demonstrate an injury in fact and a substantial likelihood that the judicial relief requested will prevent or redress the claimed injury." *Id.* "The injury must be distinct and palpable and not be one suffered alike by all citizens in the jurisdiction." *Selkirk–Priest Basin Ass'n, Inc. v. State ex rel. Batt,* 128 Idaho 831, 833–34, 919 P.2d 1032, 1034–35 (1996). There must also be a fairly traceable causal connection between the claimed injury and the challenged conduct. *Young v. City of Ketchum,* 137 Idaho 102, 44 P.3d 1157 (2002).

*Troutner v. Kempthorne*, 142 Idaho at 391, 128 P.3d at 928.

Ellsworth broadly asserts that the doctrine of legislator standing precludes Bedke and Hill from bringing this action. She relies on *Raines v. Byrd*, 521 U.S. at 820, for the proposition that individual legislators lack standing when they do not have a "personal stake" in the outcome of a dispute. In *Raines*, six members of Congress who voted against the Line Item Veto Act challenged its constitutionality, arguing that the Act caused them to suffer an institutional injury which resulted in "the diminution of legislative power." *Id.* at 821. The Supreme Court held that those individual legislators lacked standing to sue in part because they had not alleged a specific and concrete injury. *Id.* Rather, they merely alleged the "loss of political power" as opposed to total nullification of their votes. *Id.* at 821-23.

In *Troutner v. Kempthorne*, this Court found that members of the Idaho Democratic Party lacked standing to challenge the Governor's appointment and Senate confirmation of Phil Reberger to the Idaho Judicial Council. 142 Idaho at 391, 128 P.3d at 928. This Court held that the plaintiffs had "not alleged any distinct and palpable injury suffered by them. Their sole allegation of injury [was] that they and other members of the Idaho State Democratic Party were denied the

13

chance to serve on the Judicial Council because of Reberger's appointment. *Id.* at 392, 128 P.3d at 929. The Court characterized the plaintiffs' injury as a "generalized grievance," which did not confer standing because they "ha[d] not suffered a distinct palpable injury as a result of the challenged conduct." *Id.*

Conversely, this Court found standing in *Miles v. Idaho Power Company*, 116 Idaho at 640, 778 P.2d at 762. In *Miles*, Idaho Power ratepayers challenged legislation implementing an agreement involving water rights to the Snake River. *Miles*, at 637, 778 P.2d at 759. This Court found that the plaintiffs had alleged more than a mere generalized grievance because of their status as ratepayers. *Id.* at 642, 778 P.2d at 764. We concluded the plaintiffs had alleged a "specialized and peculiar injury" sufficient to confer standing to challenge the legislation. *Id.*

Here, we hold Bedke and Hill have standing to seek a declaratory judgment regarding the interpretation of Idaho Code section 67-1602(3). That statute expressly delegates power to the presiding officers of the Idaho Legislature to allocate space on the first floor of the Capitol: "All space within the first, third and fourth floors and the basement *shall be allocated by the presiding officers* of the senate and house of representatives." I.C. § 67-1602(3) (italics added). Bedke and Hill, the Speaker of the House of Representatives and the President Pro Tempore of the Senate respectively, are explicitly referred to in the statute by virtue of their roles as the "presiding officers of the senate and the house of representatives." Accordingly, they have alleged a concrete injury unique to them as the presiding officers. In fact, Bedke and Hill are the only aggrieved parties who *may* bring this suit under section 67-1602(3). The text of the statute itself establishes their standing by naming them as the elected officials authorized to "allocate" the space. If the Speaker and the Pro Tem have not been aggrieved, no one has.

Unlike the legislators in *Raines*, who asserted that their general voting powers had been diluted by the Line Item Veto Act, Bedke and Hill have alleged that they are unable to perform a statutorily authorized duty delegated specifically to them as the presiding officers of the Idaho Legislature. *Troutner* is also distinguishable. In *Troutner,* the plaintiffs alleged a "generalized grievance" regarding a gubernatorial appointment to the Idaho Judicial Council. Bedke and Hill assert a specific and particularized grievance: they have been unable to discharge their statutorily created responsibility to allocate space on the first floor of the Capitol because the Treasurer refuses to vacate her office. If the refusal is improper, it would directly interfere with the actual

14

authority granted by statute to these legislative officers. Consequently, Bedke and Hill have alleged a specific and concrete injury.

As a result, we conclude Bedke and Hill have standing to bring this action. The district court's denial of Ellsworth's motion to dismiss is affirmed. Because we have determined that neither the political question doctrine nor the standing requirement raised by Ellsworth precludes us from deciding this case, we now turn to the merits of the dispute.

**C. The non-delegation doctrine does not preclude the Idaho Legislature from delegating authority to its own presiding officers.**

Ellsworth's final argument on appeal is that the district court's interpretation of Idaho Code section 67-1602(3) is an unconstitutional delegation of legislative power because the statute gives "unbridled" authority to Bedke and Hill. Bedke and Hill respond that Ellsworth's argument lacks merit: "By definition, there cannot be an unlawful delegation of legislative authority *within* the Legislative Department."

"The non[-]delegation doctrine bars Congress from transferring its legislative power to another branch of Government." *Gundy v. United States*, 139 S. Ct. 2116, 2121, *reh'g denied*, 140 S. Ct. 579 (2019).

> In determining whether a statute is an unconstitutional delegation of legislative power, this Court has examined whether the statute imposes guidelines on the decision-making body, or grants "unbridled" authority to that body. [*Boise Redevelopment Agency v. Yick Kong Corp.*, 94 Idaho 876, 885, 499 P.2d 575, 583 (1972).] Thus, the crux of the analysis is an examination of whether the statute lacks "standards, guidelines, restrictions or qualifications of any sort placed in the delegating legislation." *See* [*Greater Boise Auditorium Dist. v. Royal Inn of Boise*, 106 Idaho 884, 886, 684 P.2d 286, 288 (1984)]. Such a lack of legislative guidance violates the Idaho Constitution's separation of powers doctrine as an unbridled delegation of lawmaking power, while the presence of such guidelines and restrictions creates a proper "fact-finding" status to ascertain the facts and conditions upon which the law becomes operative. *See id.*; [*Kerner v. Johnson*, 99 Idaho 433, 450, 583 P.2d 360, 377 (1978)]. When conducting this analysis, the Court must also consider the "practical context of the problem to be remedied and the policy to be served." *Kerner*, 99 Idaho at 450–51, 583 P.2d at 377–78.

*Emp'rs Res. Mgmt. Co. v. Kealey*, 166 Idaho 449, 461 P.3d 731, 736 (2020).

Ellsworth's argument regarding the applicability of the non-delegation doctrine lacks merit. The doctrine focuses on the delegation of legislative authority to a *separate, co-equal branch of government*, i.e., the executive or the judiciary. Section 67-1602 first provides that the legislative branch will "determine the use" of the space on the first floor of the Capitol. *See* I.C.

15

§ 67-1602(3). It then delegates the authority to allocate all space on the first floor to the leaders of the legislative branch, namely, the presiding officers.

No coordinate branch of government has been given "unbridled authority" to determine the use of that space or to use legislative law-making power. While there has been a delegation within the legislative branch, the ultimate power to wield that delegation remains in the Legislature. As a result, the non-delegation doctrine is inapplicable because no coordinate branch of government has been vested with legislative power.

**D. Idaho Code section 67-1602(3) unambiguously authorizes the presiding officers to determine the use and allocate the space within the first floor of the Capitol.**

In granting Bedke and Hill's motion for summary judgment and denying Ellsworth's motion for summary judgment, the district court interpreted section 67-1602(3). The district court began its analysis with the plain text of the statute, finding that Ellsworth's interpretation was unreasonable because it added a requirement not appearing in the text. The district court held that "[t]he Defendant's interpretation would create a condition precedent not found in the text; that the Legislature vote to determine use before the presiding officers can allocate." Rather, Bedke and Hill's interpretation—that the statute is "self-effectuating"—was, according to the district court, a reasonable interpretation. As a result, the district court concluded that the plain text of Idaho Code section 67-1602(3) unambiguously delegated authority to the presiding officers to allocate the space currently occupied by the Treasurer.

The district court next engaged in an analysis of the legislative history, alternatively finding that the relevant extrinsic evidence also favored Bedke and Hill's interpretation of section 67-1602(3). The district court determined that the "legislative department's intent was to delegate such authority to [allocate space to the] presiding officers." In considering the history of section 67-1602(3), the district court noted that "no evidence ha[d] been presented showing that a vote ha[d] ever been held by the Legislature to determine the use of the space under its control," and "no voting requirement was added to the amendment of the statute in 2007." Ultimately, the district court concluded that "absent statutory language adopting the exception for the Treasurer, the alleged agreement [between Governor Otter and the presiding officers in 2007] does not modify the Court's interpretation of the legislative intent of the statute."

On appeal, Ellsworth continues to argue that the statute contains two distinct requirements: first, a vote by the Legislature as a whole to "determine the use" and second, the presiding officers may then "allocate the space" in accordance with the vote of the Legislature. She asserts that the

16

district court "failed to properly employ the rules of statutory interpretation regarding unambiguous statutes" by neglecting to address the "plain, usual, and ordinary meanings" of the terms in the statute.

In response, Bedke and Hill argue on appeal that the statute is "self-effectuating," in that it does not impose a voting requirement on the Legislature as a whole; rather, "the first sentence merely confirms that it is the Legislature, not the Governor, that controls the use of certain space; the second sentence confers on the Legislature's presiding officers the authority to decide how specific space will be allocated." Bedke and Hill continue to argue that Ellsworth's interpretation of section 67-1602(3) "would create an unstated condition precedent" by requiring the Legislature to take formal action before the presiding officers may allocate the first-floor space.

> A statute is ambiguous when "the meaning is so doubtful or obscure that reasonable minds might be uncertain or disagree as to its meaning. However, ambiguity is not established merely because different possible interpretations are presented to a court. If this were the case then all statutes that are the subject of litigation could be considered ambiguous. . . . [A] statute is not ambiguous merely because an astute mind can devise more than one interpretation of it.'"

*Hamberlin v. Bradford*, 165 Idaho 947, 951, 454 P.3d 589, 593 (2019) (quoting *Gordon v. Hedrick*, 159 Idaho 604, 609, 364 P.3d 951, 956 (2015)). "An unambiguous statute would have only one reasonable interpretation. An alternative interpretation that is unreasonable would not make it ambiguous." *Verska*, 151 Idaho at 896, 265 P.3d at 509.

Idaho Code section 67-1602(3) provides:

> The legislative department shall *determine the use* of the space on the first, third and fourth floors as well as the basement, which basement shall include the underground atrium wings. All space within the first, third and fourth floors and the basement *shall be allocated by the presiding officers* of the senate and house of representatives.

I.C. § 67-1602(3) (italics added).

The district court correctly found that the statute unambiguously delegates authority to the presiding officers to both determine the use of and to allocate the space on the first floor. The existence of two interpretations of the statute presented by Ellsworth and the presiding officers does not render it ambiguous. If one suggested interpretation is unreasonable, that interpretation should be rejected.

We conclude that Ellsworth's suggested interpretation of the statute is unreasonable. Ellsworth's contention that the statute requires a formal vote from the legislature would add a

17

condition precedent that is not present in the text. As the district court noted in its summary judgment decision, Ellsworth's interpretation "would be persuasive if the legislature had added the words 'vote to'" before the phrase "determine the use of space. . . ." The text of the statute does not set forth a formal voting requirement for the Legislature as a whole, and requiring such a vote now, after many years of the presiding officers' allocating space via informal email communications and discussions, would cut against what the plain text requires.[2]

The context of Idaho Code section 67-1602(3) provides that the Legislature as a whole has exclusive authority over the areas listed within the statutory text, and that the authority to allocate the space is specifically delegated to the presiding officers as representatives for each chamber. Therefore, we hold that section 67-1602(3) is unambiguous and requires no formal vote by the Legislature before those presiding officers may allocate the space. Ellsworth's interpretation is unreasonable because it defies the plain text by adding a procedural step not set forth in the statute's plain language. Ellsworth's argument essentially asks us to hold that the Legislature is required to do something it has already done. In enacting Idaho Code section 67-1602(3) the Legislature gave itself the power "to determine the use" of the Capitol's first floor. That legislation became law in 2007. The way in which that power is to be exercised is through the presiding officers of the two houses of the Legislature. While describing this power as "self-effectuating" may not be entirely accurate in that the statute still requires action by the presiding officers in order to effectuate their decision, the power of the presiding officers to do what is authorized nevertheless obviously exists. Although the location and preservation of the historic office of the Treasurer are undoubtedly significant to Idaho's history, these are ultimately policy concerns— not legal concerns. We cannot "ignore or re-write the plain language of a statute simply to reach a

---

[2] Ellsworth argues that the Legislature has "acted on at least two separate occasions to determine the use of the first floor of the Capitol to include the Treasurer's office." First, Ellsworth argues that the Legislature's amendment of a different statute in 2007, Idaho Code section 67-1204, allowed money in the custody of the State Treasurer to be kept elsewhere during the renovation of the Capitol; it also provided that upon completion of the renovation, the money be returned to the vault located in the first floor office. Second, the Legislature approved the renovation plan for the Capitol, which included the Treasurer's office on the first floor. Bedke and Hill, in response, point to six instances of reallocation of space under the Legislature's control. In each instance, the decision was reached informally by agreement between the presiding officers and any parties who would be impacted by the change. The Treasurer's argument is unavailing for several reasons. First, the Legislature in amending Idaho Code section 67-1204 was not voting to determine the use of any space on the first floor pursuant to section 67-1602(3). In addition, the Legislature amended section 67-1204 again in 2019, and removed the requirement that money in the custody of the Treasurer be kept in the Capitol. As amended, section 67-1204 now requires that money in the custody of the Treasurer be "kept in a secure location." This more recent amendment not only undercuts the Treasurer's reliance on the previous versions of Idaho Code section 67-1204, it also strongly suggests the legislature has already approved the reallocation of the space currently occupied by the Treasurer and contradicts the Treasurer's argument that a vote is required.

more desirable result." *Berrett v. Clark Cnty. Sch. Dist. No. 161*, 165 Idaho 913, 928, 454 P.3d 555, 570 (2019).

Because we find that Idaho Code section 67-1602(3) is unambiguous, we need not consider the legislative history surrounding its adoption and subsequent amendment in 2007. However, even if we were to consider the alleged agreement between the 2007 legislative leadership and then-Governor Otter, the letters in the record comprising the purported agreement seem to indicate that no concrete terms were ever agreed upon. The presiding officers and Governor Otter appeared to disagree on the length of time the Treasurer's office would remain in its historic location. Further, no provision was included in the text of the statute memorializing the agreement, and the statute was passed by the Legislature and became law, albeit without Otter's signature. If Otter had wanted to ensure that the Treasurer's office would remain on the first floor permanently, he could have exercised his constitutional power to veto the bill until such a provision was included. We will not look past the clear and unambiguous text of the statute by reading into it a purported agreement between two constitutional officers.

Finally, it must be noted that our decision deals solely with the conflict presented to us by the presiding officers and the Treasurer. As between those litigants, the presiding officers have prevailed. However, the applicability of another statute, Idaho Code section 67-1608, has been brought to our attention given its potential applicability. That provision vests the authority to approve certain projects in the Capitol building with the Idaho Capitol Commission. *See* I.C. § 67-1608(2). While this statute has been cited by both parties, it has no bearing on our interpretation of Idaho Code section 67-1602(3). The statute in question provides: "The commission shall have the following powers and duties: . . . To review all proposals to reconstruct, remodel or restore space within the capitol building. All such projects shall be approved by the commission and be in conformance with the capitol building master plan." While section 67-1608 may have implications on the presiding officers' ability to remodel the Treasurer's historic office, the Idaho Capitol Commission was not a party to this litigation and therefore it is uncertain whether the Capitol Commission is adverse to Bedke and now Winder. Consequently, we leave unanswered the applicability of Idaho Code section 67-1608 to the actions of the presiding officers that may affect the Idaho Capitol Commission's authority.

### E. Bedke and Hill are entitled to costs on appeal.

Both parties seek costs on appeal pursuant to Idaho Appellate Rule 40(a). Bedke and Hill

have prevailed on appeal, consequently, they are entitled to their costs as a matter of right. I.A.R. 40(a).

## IV.   CONCLUSION

Based on the previous analysis, we affirm the district court's denial of Ellsworth's motion to dismiss. We also affirm the district court's decision granting Bedke and Hill's motion for summary judgment. We take no position on the possible applicability of Idaho Code section 67-1608 to the ability of the presiding officers to allocate the use of the Treasurer's office on the first floor of the Capitol.

Chief Justice BEVAN, Justices BURDICK, BRODY, and MOELLER CONCUR.