# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 50482

In Re:  Petition for Writ of Mandamus
or Writ of Prohibition.

-----------------------------------------------------------------

THE ASSOCIATED PRESS; RADIO
TELEVISION DIGITAL NEWS ASSOCIATION;
SINCLAIR MEDIA OF BOISE, LLC/KBOI-TV
(BOISE); THE MCCLATCHY COMPANY, LLC;
STATES NEWSROOM dba IDAHO CAPITAL
SUN; THE SEATTLE TIMES; TEGNA
INC./KREM (SPOKANE); KTVB (BOISE) AND
KING (SEATTLE); EASTIDAHONEWS.COM;
THE LEWISTON TRIBUNE; WASHINGTON
STATE ASSOCIATION OF BROADCASTERS;
ADAMS PUBLISHING GROUP dba POST
REGISTER; IDAHO PRESS CLUB; IDAHO
EDUCATION NEWS; KXLY-TV/4 NEWS NOW
AND KAPP/KVEW-TV--MORGAN MURPHY
MEDIA KXLY-TV/4 NEWS NOW; SCRIPPS
MEDIA, INC., dba KIVI-TV, a Delaware
corporation; BOISE STATE PUBLIC RADIO;
THE TIMES-NEWS; THE SPOKESMAN-
REVIEW/COWLES COMPANY; COEUR D
ALENE PRESS; THE NEW YORK TIMES
COMPANY; DAY365 dba BOISEDEV;
LAWNEWZ, INC.; SCRIPPS MEDIA, INC., a
Delaware corporation; ABC, INC.; WP
COMPANY LLC, dba THE WASHINGTON
POST; SOCIETY OF PROFESSIONAL
JOURNALISTS,

   Petitioners,

v.

SECOND JUDICIAL DISTRICT OF THE
STATE OF IDAHO, COUNTY OF LATAH;
HONORABLE MEGAN E. MARSHALL,
MAGISTRATE JUDGE,

   Respondents,

and

BRYAN C. KOHBERGER and STATE OF
IDAHO, LATAH COUNTY PROSECUTOR,

Boise, March 2023 Term

Opinion filed: April 24, 2023

Melanie Gagnepain, Clerk

**Intervenor-Respondents.** )

The Petition for Writ of Mandamus or Writ of Prohibition is <u>denied</u>.

Stoel Rives, LLP, Boise, for Petitioners.

Ferguson Durham, PLLC, Boise, for Respondents.

Kootenai County Public Defenders Office, Coeur d'Alene, for Intervenor Bryan C. Kohberger.

Latah County Prosecutor, Moscow, for Intervenor Latah County Prosecuting Attorney.

MOELLER, Justice.

A coalition of media companies has petitioned this Court, invoking its original jurisdiction to seek a writ of mandamus or a writ of prohibition to vacate a nondissemination order issued by the magistrate court in the pending criminal action of *State of Idaho v. Bryan C. Kohberger*. This Court expedited the case and ordered briefing from the parties. We have also granted motions to intervene filed by the two parties to this case, the State of Idaho, Latah County Prosecutor ("the State") and the defendant, Bryan C. Kohberger, who were also permitted to file briefs. All of the briefs have been submitted and reviewed by this Court, and we have determined that oral argument is unnecessary to resolve the question before us.

For the reasons explained below, we conclude that neither a writ of mandamus nor a writ of prohibition are appropriate remedies at this time.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 13, 2022, four University of Idaho students were found dead in their apartment in Moscow, Idaho. Bryan C. Kohberger was arrested and charged with the murders of the four students on December 30, 2022. Kohberger's case is pending in Latah County in the Second Judicial District of Idaho, and is currently scheduled for a preliminary hearing on June 26, 2023. *State of Idaho v. Bryan C. Kohberger*, Latah County Case No. CR29-22-2805. The case has drawn widespread publicity, garnering worldwide media attention and much speculation.

Recognizing the high-profile nature of the case and the extensive coverage it has received, along with the need to minimize possible pretrial prejudice, Kohberger's attorneys and the

attorneys for the State stipulated to a nondissemination order.[1] The order was signed by the presiding judge, Magistrate Judge Megan E. Marshall. The original nondissemination order stated in full:

> The Court, by stipulation of the parties, enters its Order as follows:
>
> IT IS HEREBY ORDERED that the parties to the above entitled action, including investigators, law enforcement personnel, attorneys, and agents of the prosecuting attorney or defense attorney, are prohibited from making extrajudicial statements, written or oral, concerning this case, other than a quotation from or reference to, without comment, the public records of the case.
>
> This order specifically prohibits any statement,[ ]which a reasonable person would expect to be disseminated by means of public communication that relates to the following:
>
> > 1. Evidence regarding the occurrences or transactions involved in this case;
> >
> > 2. The character, credibility, or criminal record of a party;
> >
> > 3. The performance or results of any exminations [sic] or tests or the refusal or failure of a party to submit to such tests or exminations [sic];
> >
> > 4. Any opinion as to the merits of the case or the claims or defense of a party;
> >
> > 5. Any other matter reasonably likely to interfere with a fair trial of this case, such as, but not limited to, the existence or contents of any confession, admission, or statement give [sic] by the Defendant, the possibility of a plea of guilt [sic]to the charged offense or a lesser offense, or any opinion as to the Defendant's guilt or innocence.
>
> IT IS FURTHER ORDERED that no person covered by this order shall avoid its proscriptions by actions that indirectly, but deliberately, cause a violation of this order.
>
> IT IS FURTHER ORDERED that this order, and all provisions thereof, shall remain in full force and effect throughout[] these proceedings, until such time as a verdict has been returned, unless modified by this court.

Fifteen days later, following an off-the-record meeting in chambers with Kohberger's attorneys, the prosecutors, and the attorneys for the witnesses and victims' families, the magistrate court entered an amended nondissemination order on January 18, 2023, that expanded the scope of the original order. The amended nondissemination order noted the need to curtail dissemination of "information in this case" and strike "a balance between protecting the right to a fair trial for all parties involved and the right to free expression as afforded under both the United States and Idaho

---

[1] Such orders, often referred to as "gag orders," prohibit attorneys, parties, and witnesses from publicly talking about a pending case in an effort to prevent pretrial publicity from impairing the parties' right to a fair trial. In this opinion we will use the term "nondissemination order" unless "gag order" is used in the text of a cited decision.

Constitution[s]." Based "upon the stipulation of the parties and with good cause," the magistrate court's amended order contained the following prohibitions:

> IT IS HEREBY ORDERED:
>
> 1. The attorneys for any interested party in this case, including the prosecuting attorney, defense attorney, and any attorney representing a witness, victim, or victim's family, as well as the parties to the above entitled action, including but not limited to investigators, law enforcement personal [sic], and agents for the prosecuting attorney or defense attorney, are prohibited from making extrajudicial statements (written or oral) concerning this case, except, without additional comment, a quotation from or reference to the official public record of the case.
>
> 2. This order specifically prohibits any statement, which a reasonable person would expect to be disseminated by means of public communication that relates to the following:
>
>> a. Evidence regarding the occurrences or transactions involved in the case;
>>
>> b. The character, credibility, reputation, or criminal record of a party, victim, or witness, or the identity of a witness, or the expected testimony of a party, victim, or witness;
>>
>> c. The performance or results of any examination or test or the refusal or failure of a person to submit to an examination or test;
>>
>> d. Any opinion as to the merits of the case or the claims or defense of a party;
>>
>> e. Any information a lawyer knows or reasonably should know is likely to be inadmissible as evidence in a trial and that would, if disclosed, create a substantial risk of prejudicing an impartial trial;
>>
>> f. Any information reasonably likely to interfere with a fair trial in this case afforded under the United States and Idaho Constitution, such as the existence or contents of any confession, admission, or statement given by the Defendant, the possibility of a plea of guilt [sic], or any opinion as to the Defendant's guilt or innocence.
>
> IT IS FURTHER ORDERED that no individual covered by this order shall avoid its proscriptions by actions directly or indirectly, but deliberately, that result in violating this order.
>
> IT IS FURTHER ORDERED that this order, and all provisions herein, shall remain in full force and effect throughout the entirety of this case unless otherwise ordered by this court.

Shortly after the amended nondissemination order was issued by the magistrate court, a coalition of media companies[2] directly petitioned this Court, invoking our original jurisdiction and

---

[2] The coalition includes: the Associated Press; Radio Television Digital News Association; Sinclair Media of Boise, LLC/KBOI-TV (Boise); The McClatchy Company dba The Idaho Statesman; States Newsroom dba Idaho Capital

4

seeking a writ of mandamus or a writ of prohibition to vacate the magistrate court's amended order. These companies (collectively, "Petitioners") challenge the constitutionality of the nondissemination order and seek an extraordinary writ to protect free speech rights and the media's ability to cover the case under the U.S. and Idaho Constitutions. Notably, Petitioners did not first file an objection with, or seek relief from, the magistrate court before filing their petition against the Respondents in this Court. The petition named Magistrate Judge Marshall and the Second Judicial District of the State of Idaho, Latah County, as Respondents. Kohberger and the State each filed a petition seeking to intervene—both of which we granted. Both Intervenors opposed the petition and argued in support of maintaining the nondissemination order.

Petitioners claim that to date there have been no "notable leaks or dissemination of extrajudicial information that would prejudice Mr. Kohberger's right to a fair trial." In their briefing, they present several situations that suggest the amended nondissemination order is vague or overbroad. As taken from Petitioners' briefing and exhibits, examples of these accounts include:

- A victim's family wanted to speak with the press but feels bound by the nondissemination order.

- The emergency dispatch service that receives the 911 calls for Moscow, Idaho has requested declaratory relief in a Washington suit to determine whether it can disclose 911 tapes in response to public records requests.

- Public records requests have been denied by the Latah County's Sheriff's Office, Moscow Police Department, Pullman Police Department, and Washington State Police Department because of the nondissemination order.

- The Moscow Police Department published a press release stating it would no longer communicate with the public or media about Kohberger's case.

- Moscow's mayor informed the press he could not discuss "the overall community healing" because of the nondissemination order, as advised by the city attorney.

Respondents maintain that there have already been prejudicial disseminations of evidence that implicates both Kohberger and the State's right to a fair trial. They argue that the "nondissemination order speaks for itself" on this matter.

---

Sun; the Seattle Times; TEGNA, Inc./KREM (Spokane); KTVB (Boise); EastIdahoNews.com; the Lewiston Tribune; Washington State Association of Broadcasters; Adams Publishing Group dba Post Register (Idaho Falls); Idaho Press Club; Idaho Education News; KXLY TV (Spokane); Scripps Media, Inc., dba KIVI-TV (Nampa); Boise State Public Radio; the Times-News (Twin Falls); the Spokesman Review/Cowles Company; Coeur d'Alene Press; the New York Times Company; Day 365, LLC, dba BoiseDev; LawNewz, Inc.; Court TV Media, LLC; ABC, Inc.; WP Company, LLC, dba the Washington Post; and the Society of Professional Journalists.

Additionally, after briefing commenced, Respondents and Intervenors provided this Court with a partially redacted memorandum of the conference the magistrate court held in chambers on January 13, 2023, about five days before issuing the amended nondissemination order. This conference was an off-the-record meeting via Zoom with Judge Marshall, prosecutors, defense counsel, the judge's clerk, and other attorneys for the witnesses and the victims' families in attendance. As explained by Respondents, "[t]he purpose of the call was to speak to the attorneys associated with the case and review the court's recent nondissemination order which prohibited them from speaking with the media, in response to what the court was seeing and hearing from various media sources." They noted that because "not all attorneys were complying with the court's [original] nondissemination order," "the court wanted to review its terms and Rule 3.6 of the Idaho Rules of Professional Conduct with them."

The State and Kohberger prepared a joint-memorandum that summarized the events of this meeting. The magistrate court granted a stipulated motion to file this memorandum under seal. However, after the petition was filed, the State and Kohberger filed a motion to unseal a redacted version[3] of the memorandum, which the magistrate court granted upon "weigh[ing] the interests in privacy and public disclosure." The Respondents have now supplied the redacted version of the memorandum for the record before this Court. The summarized conversations from this meeting largely concerned attorney speech, the rules of professional conduct, the purpose of the original nondissemination order, and the need to protect Kohberger's right to a fair trial. For example:

- Judge Marshall reiterated that "she is not saying that clients cannot talk to the media." She reminded the parties of Idaho Rule of Professional Conduct 3.6 and the lawyers' duties.

- Judge Marshall "clarifie[d] that attorneys are not prohibited from advising their clients, but they are prohibited from speaking to the media."

- There was an allegation of information being leaked from the prosecutor's office.

- There were accusations in the meeting that at least one attorney for a potential witness has been making false statements and/or disseminating the same to the media.

The amended nondissemination order that resulted from this meeting was stipulated to by all parties to the case. In response, the media coalition directly petitioned this Court for redress, invoking our original jurisdiction and seeking relief via an extraordinary writ.

## II. ANALYSIS

---

[3] The redactions in the memorandum serve to protect the identities of potential witnesses in Kohberger's upcoming trial.

Petitioners have requested that the Court issue either a writ of mandamus or a writ of prohibition to vacate the amended nondissemination order issued by the magistrate court. They challenge the constitutionality of the amended nondissemination order and argue that it violates the free speech provisions of the federal and state constitutions, especially as they concern the ability of the press to cover matters of public interest. Respondents contend that this Court should deny the petition because the amended nondissemination order applies only to trial participants, adheres to the Idaho Rules of Professional Conduct governing attorneys, is not a prior restraint against Petitioners, and is otherwise constitutionally sound. The State and Respondents also raise a question of whether Petitioners have standing to assert the First Amendment rights of trial participants, while Kohberger argues that an extraordinary writ is an inappropriate remedy where the media had the ability to seek relief before the magistrate court and have not done so.

Before reaching the merits of Petitioners' claims, we must first address the issues of justiciability and jurisdiction to determine (1) whether Petitioners have standing to bring their petition and (2) whether they have properly invoked this Court's original jurisdiction.

## A. The Petitioners have standing.

" 'Concepts of justiciability, including standing, identify appropriate or suitable occasions for adjudication by a court.' " *Coeur d'Alene Tribe v. Denney*, 161 Idaho 508, 513, 387 P.3d 761, 766 (2015) (quoting *State v. Phillip Morris, Inc.*, 158 Idaho 874, 881, 354 P.3d 13 187, 194 (2015)). "Standing is a threshold determination by this Court before reaching the merits of the case." *Reclaim Idaho v. Denney*, 169 Idaho 406, 418, 497 P.3d 160, 172 (2021). It is an inquiry that "focuses on the party seeking relief and not on the issues the party wishes to have adjudicated." *Id.* (quoting *Young v. City of Ketchum*, 137 Idaho 102, 104, 44 P.3d 1157, 1159 (2002)). The origin of Idaho's standing rule stems from the United States Supreme Court and the U.S. Constitution because there is no "case or controversy" clause, or an analogous provision, in the Idaho Constitution. *Id.* at 418–19, 497 P.3d at 172–73.

To establish standing, "a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Id.* at 419, 497 P.3d at 173 (brackets omitted) (quoting *Philip Morris, Inc.*, 158 Idaho at 881, 354 P.3d at 194). To satisfy the first element, an injury-in-fact, a party "must allege or demonstrate an injury that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* (citations and internal quotation marks omitted).

Petitioners seek a writ of mandamus or of prohibition to compel the magistrate court to vacate a nondissemination order. They claim that the order has violated their First Amendment rights concerning freedom of the press by restricting their ability to gather information for publication. In other words, they argue that the amended nondissemination order "restricts [their] rights to receive speech," which they wish to publish. We agree that the injury claimed here is one that is recognized under the First Amendment.

"The overbreadth doctrine permits litigants to challenge First Amendment restrictions even so far as they also impinge others' First Amendment rights." *In re Murphy-Brown, LLC*, 907 F.3d 788, 799 (4th Cir. 2018) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 611-13 (1973)). Where a trial court's "order impairs the media's ability to gather news by effectively denying the media access to trial counsel, a concrete personal interest is affected." *Radio & Television News Ass'n of S. California v. U.S. Dist. Ct. for Cent. Dist. of California*, 781 F.2d 1443, 1445 (9th Cir. 1986). Thus, orders that restrict the speech of trial participants can create an injury to the press sufficient for standing to defend free speech. *See id; United States v. Aldawsari*, 683 F.3d 660, 665 (5th Cir. 2012); *Application of Dow Jones & Co., Inc.*, 842 F.2d 603, 608 (2d Cir. 1988).

In this context, the record clearly supports Petitioners' claim that, as news organizations, they are potential recipients of speech from the attorneys, witnesses, and parties having knowledge of the case. They maintain that the amended nondissemination order hinders their ability to gather such information. If the Petitioners' allegations are true, they have alleged "an injury that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Reclaim Idaho*, 169 Idaho at 419, 497 P.3d at 173 (citations and internal quotation marks omitted). Additionally, if the amended nondissemination order is vague, overbroad, unduly restrictive, or not narrowly drawn, it would be an unconstitutional obstacle to their gathering of such information. *See Radio & Television News*, 781 F.2d at 1445–46; *In re Murphy-Brown*, 907 F.3d at 799–800.

Here, the amended nondissemination order broadly states that those "prohibited" from commenting on the case "*includ[es] but [is] not limited to*" individuals from a list of specified categories. (Emphasis added). The order also restricts such individuals from commenting on anything "concerning this case," aside from items in the "official public record of the case." While the wording of the order appears to apply to both attorneys *and* a broad array of individuals, contrasting statements in the memorandum suggest that the court "is not ordering clients (i.e.,

8

witnesses) not to talk to the media" and "[the judge] reiterates she is not saying that clients cannot talk to the media."

Based on the record, we conclude that for the purpose of establishing standing, Petitioners have sufficiently alleged an injury in the form of their diminished ability to receive speech and effectively gather news. Further, the media's concern that the order's provisions are vague, overbroad, unduly restrictive, and not narrowly drawn are not merely contrived, and if established, could improperly infringe on the press's constitutional right to report on the case. *See In re Murphy-Brown*, 907 F.3d at 799–800. Therefore, without deciding the merits, we conclude that on its face the petition alleges (1) an injury in fact, (2) a causal link between the injury and the amended order, and (3) a likelihood that if Petitioners prevail, the relief requested would redress the injury claimed. *Reclaim Idaho*, 169 Idaho at 419, 497 P.3d at 173. Therefore, Petitioners have shown sufficient standing to challenge the nondissemination order.

## B. Original Jurisdiction

### 1. *The prerequisites for invoking the Idaho Supreme Court's original jurisdiction.*

Even if a party has standing, it must still establish that it has properly invoked this Court's jurisdiction. The Idaho Constitution vests this Court with "original jurisdiction" to issue writs of mandamus and prohibition, "and all writs necessary or proper to the complete exercise of its appellate jurisdiction." IDAHO CONST. art. V, § 9. "Any person may apply to the Supreme Court for the issuance of any extraordinary writ or other proceeding over which the Supreme Court has original jurisdiction." I.A.R. 5(a). "This original jurisdiction is limited only by the separation of powers provisions contained in Article II, Section 1 of the Idaho Constitution and this Court's own rules." *Ybarra v. Legislature by Bedke*, 166 Idaho 902, 906, 466 P.3d 421, 425 (2020). *See also Reclaim Idaho*, 169 Idaho at 418, 497 P.3d at 172. Once this Court asserts its jurisdiction, it may issue writs of mandamus or prohibition. *Mead v. Arnell*, 117 Idaho 660, 663–64, 791 P.2d 410, 413–14 (1990). This is a discretionary power of this Court. *See id.*

"The writ of prohibition is not a remedy in the ordinary course of law, but is an extraordinary remedy." *Maxwell v. Terrell*, 37 Idaho 767, 774, 220 P. 411, 413 (1923). *See also Wasden ex rel. State v. Idaho State Bd. of Land Comm'rs*, 150 Idaho 547, 551, 249 P.3d 346, 350 (2010). It is only issued with caution. *Id.* "[A writ of prohibition] may be issued by the supreme court or any district court to an inferior tribunal, or to a corporation, board or person in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law." I.C. § 7-

402 (codifying the characteristics of a common law writ). Similarly, a writ of mandamus "is not a writ of right, and this Court's choice to issue a writ is discretionary when compelled by urgent necessity." *Hepworth Holzer, LLP v. Fourth Jud. Dist. of State*, 169 Idaho 387, 393, 496 P.3d 873, 879 (2021). Thus, "the existence of an adequate remedy in the ordinary course of law, either legal or equitable in nature, will prevent the issuance of a writ of mandamus." *Coeur D'Alene Tribe*, 161 Idaho at 523, 387 P.3d at 776. Additionally, the "party seeking the writ of mandamus has the burden of proving the absence of an adequate, plain, or speedy remedy in the ordinary course of law." *Id.*

A writ of prohibition or mandamus can undoubtedly be an appropriate legal avenue where the petition "alleges sufficient facts concerning a possible constitutional violation of an urgent nature." *See, e.g.*, *Reclaim Idaho*, 169 Idaho at 418, 497 P.3d at 172 (quoting *Sweeney v. Otter*, 119 Idaho 135, 138, 804 P.2d 308, 311 (1990)); *Idaho Watersheds Project v. State Bd. of Land Comm'rs*, 133 Idaho 55, 57, 982 P.2d 358, 360 (1999). It is equally well recognized that such petitions are an appropriate mechanism across jurisdictions in the United States for the media to challenge overbroad nondissemination orders. *See, e.g.*, *In re Murphy-Brown*, 907 F.3d at 796. However, the core procedural requirement to issue a writ of prohibition remains—the petitioner must prove that no plain, speedy, and adequate remedy at law is available. I.C. § 7-402. Likewise, a writ of mandamus must be "compelled by urgent necessity." *Hepworth Holzer*, 169 Idaho at 393, 496 P.3d at 879.

"It is fundamental that a writ will not function as the equivalent of an appeal or a petition for review." *Rim View Trout Co. v. Idaho Dep't of Water Res.*, 119 Idaho 676, 677, 809 P.2d 1155, 1156 (1991). Equally important here is our longstanding rule that we will not "usurp" a lower court's role of "deciding new legal issues in the first instance" or from serving as the trier of fact. *See Siercke v. Siercke*, 167 Idaho 709, 716, 476 P.3d 376, 383 (2020); *Fox v. Mountain W. Elec., Inc.*, 137 Idaho 703, 706–07, 52 P.3d 848, 851–52 (2002). In *Clark v. Ada Cnty Bd. of Comm'rs*, we emphasized that an extraordinary writ under our original jurisdiction requires extraordinary circumstances, and that a writ of prohibition will not issue where a plain, speedy, and adequate remedy of law is available:

> "It is a principle of universal application, and one which lies at the very foundation of the law of prohibition, that the jurisdiction is strictly confined to cases where no other remedy exists, and it is always a sufficient reason for withholding the writ that the party aggrieved has another and complete remedy at law. And the writ will

10

not be allowed to take the place of an appeal. In all cases, therefore, where the party has ample remedy by appeal from the order or judgment of the inferior court, prohibition will not lie, no such pressing necessity appearing in such cases as to warrant the interposition of this extraordinary remedy, and the writ not being one of absolute right, but resting largely in the sound discretion of the court."

98 Idaho 749, 754, 572 P.2d 501, 506 (1977) (quoting *Sherlock v. Mayor and City of Jacksonville*, 17 Fla. 93 (1879)).

Therefore, before we bypass the role of the trial court and address the merits of Petitioners' claim as an original action, we must decide whether the circumstances of this case are extraordinary and whether no plain, speedy, and adequate remedy of law exists.

### 2. *Petitioners have not properly invoked the original jurisdiction of this Court.*

We conclude that Petitioners have not demonstrated the absence of an adequate, plain, or speedy remedy in the ordinary course of law. In fact, the record establishes quite the opposite to be true. Petitioners came to this Court *first* without seeking *any* remedy or clarification from the magistrate court that issued the amended nondissemination order. While Petitioners have alleged that they had "no opportunity to object, review, or otherwise participate in the decision-making process," the record shows that they never formally objected to the amended non-dissemination order or sought clarification from the magistrate court. Moreover, Petitioners have failed to show that seeking redress before the magistrate court would not provide an adequate, plain, or speedy avenue to redress their grievances. Case law and common practice across the trial courts of Idaho, as well as our sister jurisdictions, suggest otherwise.

Petitioners are correct that Idaho's Rules of Criminal Procedure do not provide a specific mechanism for third parties to intervene in a criminal case. Likewise, the Federal Rules of Criminal Procedure do not provide for a motion to intervene in a criminal case brought by the United States. *United States v. Loughner*, 807 F. Supp. 2d 828, 830 (D. Ariz. 2011). However, both state and federal courts often permit the media to intervene in criminal cases on a limited basis—or at least file a motion as interested parties—in the defense of public access and free speech, including in Idaho.

We note that this is a common practice nationwide and trial courts are often called upon to resolve these types of concerns by the media. *See, e.g.*, *Cowles Pub. Co. v. Magistrate Ct. of the First Jud. Dist. of State, Cnty. of Kootenai*, 118 Idaho 753, 755, 800 P.2d 640, 642 (1990) (an Idaho magistrate court permitted a publishing company "to argue its motion seeking public access to the preliminary hearing"); *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 543 (1976) (media

11

petitioners successfully filed for leave to intervene in the district court's criminal proceedings of a high-profile murder trial before pursuing mandamus relief from a restraining order before the Nebraska Supreme Court); *N. Jersey Media Grp. Inc v. United States*, 836 F.3d 421, 426–27 (3d Cir. 2016) (media organizations filed a motion to intervene in a criminal case, arguing they had a common law right of public access to a letter they argued was akin to a "bill of particulars"); *In re The Wall St. J.*, 601 F. App'x 215, 217 (4th Cir. 2015) (noting that the district court permitted the media to intervene in a criminal case and thereafter modified its sealing and gag order); *KPNX Broad. v. Superior Ct. In & For Maricopa Cnty.*, 678 P.2d 431, 433–34 (Ariz. 1984) (a broadcasting company successfully intervened in a criminal trial to request the trial court vacate speech restrictions).

For example, in *KPNX Broadcasting*, the Supreme Court of Arizona discussed its prior dismissal of a petition for special action to stay or vacate certain orders issued by a trial court that affected the media. 678 P.2d at 433–34. In that case, the petitioners were a news reporter and courtroom sketch artist assigned to cover a high-profile murder trial. *Id.* at 434. The court imposed a nondissemination order on trial participants' speech with the media upon the stipulated request of the prosecution and defense. In response to jurors' fears of retribution and their personal safety, the trial court also orally ordered that all courtroom sketches including the jury had to be reviewed by the court before their presentation on television. *Id.* The reporter from KPNX, along with the First Amendment Coalition, first filed a petition for special action with the Supreme Court of Arizona, seeking to stay or vacate these orders from the trial court. *Id.*

The Supreme Court of Arizona declined jurisdiction and dismissed the petitioners' action for (1) failure to join the real parties in interest, (2) failure to exhaust their remedies in the trial court before seeking relief by special action, and (3) the Coalition's lack of standing. *Id.* Following dismissal, the petitioners along with the media station employing the reporter, KPNX, successfully moved to intervene in the trial court and requested the respondent judge vacate the orders. When the judge refused, a new petition to the Arizona Supreme Court followed—this time with full review of the orders—and, ultimately, the Arizona Supreme Court granted relief in part. *Id.*

Similarly, in *In re Murphy-Brown*, 907 F.3d at 795–96, the U. S. Court of Appeals for the Fourth Circuit reviewed the merits of a petition for a writ of mandamus against a gag order *after* establishing the "extraordinary situation[]" that called for an exercise of its mandamus jurisdiction. The Fourth Circuit was asked to review a "sweeping" gag order issued in a series of highly

12

publicized nuisance lawsuits filed against the hog industry in North Carolina. *Id.* at 792. While that case dealt with civil matters, the Fourth Circuit's approach to special relief is instructive here, particularly since it applied the same mandamus standard from its review of gag orders issued in criminal proceedings. *Id.* at 796.

The Fourth Circuit determined that the petition for mandamus relief was appropriate where "[t]he trial court had already considered the legal issues surrounding the gag order" and the loss of First Amendment freedoms "unquestionably constitutes irreparable injury." *Id.* While the respondents in *Murphy-Brown* argued that the petitioners should have sought reconsideration before the district court before filing their petition, the Fourth Circuit disagreed. It determined that "[p]arties need not endure repeated and irreparable abridgments of their First Amendment rights simply to afford the district court a second chance." *Id.* The trial court had already considered the legal issues, and a motion for reconsideration "would not have been an 'adequate' means of attaining relief from the gag order." *Id.*

These cases not only demonstrate the relatively common practice of media organizations first seeking relief from the trial courts, but they also show that appellate courts are cautious in exercising original jurisdiction when adequate remedies at law are still available. This latter principle is well illustrated in the *Radio & Television News* case from the Ninth Circuit. In that case, the petitioner—an umbrella organization of journalists—petitioned the U.S. Court of Appeals for the Ninth Circuit for a writ of mandamus "without first intervening in the district court below to challenge the amended restraining order." *Radio & Television News*, 781 F.2d at 1444 n.2. While the Ninth Circuit exercised its mandamus jurisdiction *without* an underlying proceeding at the trial court, it did so only after determining there were "extraordinary circumstances" at hand— including the lack of "other adequate means, such as direct appeal, to attain [] relief" and that there would be "damage[] or prejudice[]" to the petitioner "in a way not correctable on appeal." *Id.* at 1444 n.2 and 1445. This is in line with our case law, which has held "the existence of an adequate remedy in the ordinary course of law, either legal or equitable in nature, will prevent the issuance of a writ of mandamus." *Coeur D'Alene Tribe*, 161 Idaho at 523, 387 P.3d at 776. It is also a bar to issuing a writ of prohibition. *Wasden*, 150 Idaho at 554, 249 P.3d at 353.

Nothing in the briefing or record suggests that a remedy from the magistrate court was pursued by the Petitioners, much less denied. Therefore, we conclude that other remedies were available to Petitioners before seeking this Court's intervention. Additionally, there has been no

13

showing that extraordinary circumstances justify accepting this case under our original jurisdiction. By failing to pursue a remedy from the magistrate court before pursuing an extraordinary remedy from this Court, Petitioners have forgotten that we are "the court of last resort in Idaho"—not the court of first resort. *State v. Cates*, 117 Idaho 372, 372, 788 P.2d 187, 188 (1990). Only rare and special circumstances warrant an extraordinary remedy and cause us to exercise our original jurisdiction. *See, e.g.*, *Maxwell*, 37 Idaho at 774, 220 P. at 413. We have consistently held that the "party seeking the writ of mandamus has the burden of proving the absence of an adequate, plain, or speedy remedy in the ordinary course of law." *Coeur D'Alene Tribe*, 161 Idaho at 523, 387 P.3d at 776. Petitioners have not met this burden of proof.

Accordingly, if Petitioners want relief or clarification of the amended nondissemination order, the proper course is to first seek redress from the magistrate court which issued the amended order. If the media is still aggrieved after seeking clarification or an amendment to the existing order, then they have the avenue of appeal. *See Cowles Pub. Co.*, 118 Idaho at 755, 800 P.2d at 642 (a petitioner filed for a writ of mandamus with this Court *after* it argued its case before the magistrate court and its motion seeking public access to a preliminary hearing was denied).

Importantly, we caution that our decision in this case should *not* be read to support a widespread right of the press—or anyone else—to routinely intervene in Idaho's criminal proceedings. Our holding here only endorses a limited right, applicable when a trial court's responsibility to balance the Sixth Amendment rights of the accused with the First Amendment interests of the media becomes an issue. While Idaho's "criminal prosecutions are public matters, sought by the State on behalf of its citizen[s]," *State v. Johnson*, 167 Idaho 454, 458, 470 P.3d 1263, 1267 (Ct. App. 2020), Idaho law defines the State and the person charged as the only parties to a criminal action. I.C. § 19-104. Unlike the state and federal rules of civil procedure that often permit the intervention of interested parties to an action, intervention in criminal proceedings is much more circumscribed. As articulated in *United States v. Carmichael*,

> Intervention in criminal cases is generally limited to those instances in which a third party's constitutional or other federal rights are implicated by the resolution of a particular motion, request, or other issue during the course of a criminal case. For example, courts sometimes permit the press to intervene in a criminal case where a decision to close criminal proceedings to the public may affect its First Amendment rights. In addition, third parties are occasionally allowed to intervene in a criminal trial to challenge a request for the production of documents on the ground of privilege, or to protect other rights implicated by a particular proceeding.

342 F. Supp. 2d 1070, 1072 (M.D. Ala. 2004) (citations omitted).

14

We are also mindful that under the circumstances presented here, granting Petitioners' request would essentially invite the media and others to bring a direct challenge to this Court any time a trial judge issues a nondissemination order or admonishes the attorneys not to discuss the case with the media—without first attempting to resolve the issue before the court issuing the order. While we recognize the high public interest in such matters, and the media's important role in providing the public information, we cannot routinely entertain requests to grant an extraordinary writ where a plain, speedy, and adequate remedy is still available. *See Clark*, 98 Idaho at 754, 572 P.2d at 506.

This Court has long respected the media's role in our constitutional republic, and honored the promises in both the Idaho Constitution and the First Amendment to the U.S. Constitution:

> The underlying rationale of the First Amendment protection of freedom of the press is clear . . . the public must know the truth in order to make value judgments, . . . The only reliable source of that truth is a 'press' . . . which is free to publish that truth without government censorship. We cannot accept the premise that the public's right to know the truth is somehow enhanced by prohibiting the disclosure of truth in the courts of the public.

*Caldero v. Tribune Pub. Co*., 98 Idaho 288, 298, 562 P.2d 791, 801 (1977). *See also Sheppard v. Maxwell*, 384 U.S. 333, 350 (1966) ("[J]ustice cannot survive behind walls of silence" and a responsible press "guards against the miscarriage of justice by subjecting the police, prosecutors, and judicial processes to extensive public scrutiny and criticism."). Although we still hold to that view today, we recognize that our trial courts have an increasingly difficult task in balancing the Sixth Amendment rights of a defendant with the First Amendment protections afforded the press. With the advent of the internet and social media, this balancing act has become even more challenging today than it was in the 1960s and 1970s when *Sheppard* and *Caldero* were decided. Although these are well-guarded rights, those seeking to enforce them must still bow to the jurisdictional rules and procedural channels litigants are constrained to follow.

### III. CONCLUSION

For the reasons expressed above, we dismiss the petition and deny Petitioners' request for a writ of mandamus or a writ of prohibition. The Respondents, as the prevailing parties, are awarded costs as a matter of course pursuant to Idaho Appellate Rule 40(a).

Chief Justice BEVAN, Justices BRODY, STEGNER and ZAHN **CONCUR.**

15