# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 50987

| | |
|---|---|
| In Re: Verified Petition for a Writ of Mandamus ) | |
| --------------------------------------------------------------- ) | **Boise, September 2023 Term** |
| ) | |
| IDAHO STATE APPELLATE PUBLIC ) DEFENDER, ) | **Opinion filed: December 18, 2023** |
| ) | |
| Petitioner, ) | **Melanie Gagnepain, Clerk** |
| v. ) | |
| ) | |
| FOURTH JUDICIAL DISTRICT COURT, ) COUNTY OF ADA; HONORABLE CHERI C. ) COPSEY, DISTRICT JUDGE, ) | |
| ) | |
| Respondents, ) | |
| and ) | |
| ) | |
| ADA COUNTY PROSECUTING ATTORNEY, ) | |
| ) | |
| Intervenor-Respondent. ) | |

Original Petition brought by the Idaho State Appellate Public Defender seeking a Writ of Mandamus before the Idaho Supreme Court.

The Petition for a Writ of Mandamus is <u>granted</u>.

Eric R. Lehtinen, Interim State Appellate Public Defender, Boise, for Petitioner. Eric Don Fredericksen argued.

Smith & Malek, PLLC, Boise, for Respondents. Kolby K. Reddish argued.

Jan M. Bennetts, Ada County Prosecuting Attorney, Boise, for Intervenor-Respondent. Jill Longhurst argued.

_____

MOELLER, Justice.

The Idaho State Appellate Public Defender has filed a direct action with this Court seeking to invoke our original jurisdiction so that a writ of mandamus may issue against the Fourth Judicial District of the State of Idaho and Cheri C. Copsey, Senior District Judge. Judge Copsey is the presiding judge in *Abdullah v. State*, No. CV-01-22-9520 (Idaho Dist. Ct. Ada County 2022), a post-conviction proceeding in Ada County. When Eric Don Fredericksen, the Idaho State

1

Appellate Public Defender[1] (the "SAPD"), concluded that a conflict of interest precluded him from continuing to represent Azad Abdullah ("Abdullah"), he attempted to furnish a new attorney for Abdullah from the Federal Defender's Office in Pennsylvania. The new attorney, Eric Montroy, had been previously appointed to represent Abdullah in his habeas corpus proceeding in federal court. Judge Copsey refused to appoint Montroy, maintaining that he also had a conflict of interest, and stated that she would not appoint an out-of-state attorney. She then removed the SAPD from the case and appointed a new attorney of her own choosing.

Relying on Idaho Code section 19-5906, the SAPD asserts that the Idaho Code "unambiguously vests the SAPD with the duty and authority to arrange for counsel for indigent clients" due to a conflict of interest or for any other reason. The SAPD asks this Court to issue a writ of mandamus to Judge Copsey and the Fourth Judicial District of the State of Idaho to remedy what it views as an infringement of his statutory grant of authority. Additionally, he asks us to issue a writ of mandamus to the Fourth Judicial District for the removal of Judge Copsey as the presiding judge over Abdullah's postconviction action. The Fourth Judicial District and Judge Copsey ("Respondents") oppose the petition. The Ada County Prosecutor ("the ACP") moved to intervene in this action, which was conditionally granted by this Court. The ACP opposes the petition for writ of mandamus, arguing that the SAPD does not have standing to bring this action and that Judge Copsey should remain as the presiding judge in the post-conviction proceeding before the district court.

For the reasons stated below, we conclude that the SAPD (1) has properly invoked our original jurisdiction under the Idaho Constitution, and (2) is entitled to the extraordinary relief he is seeking.

### I. FACTUAL AND PROCEDURAL BACKGROUND

---

[1] In his petition, the Idaho State Appellate Public Defender, seeks a writ of mandamus related to an alleged usurpation of his authority as a public official. While the Idaho State Public Defender Act details the responsibilities and authority of the "state appellate public defender," it also references the "office." The former is a state public official to whom the statute vests certain authority, while the latter references an agency. *See, e.g.*, I.C. § 19-5905(5) ("The state appellate public defender, *in his discretion*, may contract with private attorneys to provide representation on a case-by-case basis when such contracts would conserve budgetary resources." (emphasis added)). Inasmuch as the statute differentiates between the "state appellate public defender" and his office, we will employ the same distinction in this opinion. Thus, when we refer to the SAPD, we are referring to Mr. Frederickson in his official capacity as the SAPD. Any reference to his office as a state agency will be referred to herein as the "Office of the SAPD."

2

This original action asks us to determine the scope of the SAPD's authority under Idaho law to furnish substitute counsel for indigent defendants when a conflict of interest occurs. It arises out of the Office of the SAPD's representation of Abdullah[2] in his state post-conviction proceeding and the presiding district judge's view that a potential conflict of interest may arise with the substitute counsel the SAPD attempted to provide.

When the SAPD acknowledged his office's conflict of interest in the continued representation of Abdullah, he furnished the name of Eric Montroy, to replace his office in the case. Montroy is an experienced federal public defender from the Eastern District of Pennsylvania, who is already representing Abdullah in a parallel federal habeas corpus action in Idaho. When Montroy's name was first mentioned as substitute counsel at a status conference in September 2022, the district court *sua sponte* raised concerns about having the same attorney or firm represent Abdullah in the state post-conviction proceeding as is currently representing him in the federal habeas corpus proceeding. Specifically, the district court noted:

> I just will tell everyone, I decided to have a conference because I read [the SAPD's] filing where he was indicating that he wanted to bring in the federal public defender. I have some concerns about that. I'm not the first judge, I'm sure, that you've heard that from.
>
> Can – so I don't know what the State's position is. So I'll let the State tell me what their position is. But I'm putting it out there for all of you that I have some concerns about appointing [Eric Montroy and the Federal Community Defender for the Eastern District of Pennsylvania] to represent him in the state court action.

After the State addressed potential financial concerns relating to how payment would be structured, the district court clarified the nature of its concerns:

> [Judge Copsey]: Mr. Fredrickson, I have bigger concerns than that. . . . Not only am I concerned about the financial issue and who is paying who, my big concern is Mr. Abdullah has a statutory right to post-conviction counsel, unlike your traditional post-conviction case. He also, therefore, even though he doesn't have a

---

[2] As for background on the underlying conviction, in November 2004 "a jury found Azad Haji Abdullah guilty of first-degree murder, first-degree arson, three counts of attempted first-degree murder, and felony injury to a child." *State v. Abdullah*, 158 Idaho 386, 405, 348 P.3d 1, 20 (2015). In the sentencing phase, the jury found two aggravating circumstances and also found that "all the mitigating circumstances when weighed against each aggravating circumstance individually were not sufficiently compelling to make the death penalty unjust." *Id.* "Pursuant to the jury verdicts, the district court entered judgments of conviction and sentenced Abdullah to death for first-degree murder and to a total of eighty years imprisonment for the remaining five convictions." *Id.* Following Abdullah's sentencing, the Office of the SAPD was appointed to represent Abdullah in his appeal.

3

Sixth Amendment right to counsel, but once he has a statutory right, he has a Sixth Amendment right to conflict-free.

I think my reputation probably proceeds me, but I'm very concerned about conflict. And in addition to what I believe has to happen, which is that the federal public defender would have to have the permission of the presiding judge, I'm more concerned about the fact that in the federal habeas case one of the things they're going to be doing would be to review what exactly happened in the state case. And I see it as a direct conflict of interest. It seems to me they would be presented with sort of a dilemma: What do we pursue in state court? How is that potentially going to affect what happens in federal court? And I think the purpose behind the original Rule 44.3 –

[The State]: Two.

[Judge Copsey]: – .2, I think the whole purpose behind it is to make sure that those people in the death penalty case are represented by counsel who can bring – have the complete ability to bring any case they want. So allay my fears.

The SAPD responded, recognizing that "[t]he SAPD definitely has a conflict." However, the SAPD also explained the difficulty in finding substitute representation for Abdullah: "The struggle we have with Mr. Abdullah's case is it seems like anybody who has ever done capital representation in the state of Idaho has touched this case at one point or another."

After a colloquy about previous attorneys who were no longer available to represent Abdullah, the district court returned to its concern over having the same lawyer represent Abdullah in both the state and federal proceedings. The SAPD explained that, in his view, it was not a conflict of interest for the Federal Community Defender for the Eastern District of Pennsylvania (the "FCD") to represent Abdullah in both cases. This explanation did not alleviate the district court's concerns as it continued its discussion with the SAPD:

But there is [a conflict of interest] because everything they do here is going to be under the microscope in the federal case. And so you can't have -- they're going to be faced with a real ethical dilemma. Not suggesting that they -- that it would affect them, but at least the appearance is there, either affect how they represent him in the state case or affect how they represent him in the federal case. In the death penalty case, I don't intend to go down that path.

So in my view, unless you can show me that the presiding judge -- first place, that would be your first problem -- approves the representation, unless you can show me that, we're definitely not going there. But you're also going to have to show me how we can avoid the conflict of interest.

And since -- and I'm not as concerned about the timing, frankly, because we now -- the 42 days has been met. You raised it. I'm not -- to me, it sounds pretty

much like this is a legal issue. You have to address the legal issue before you even get to any additional issues. The State has filed their motion. So I just don't see this.

And I'll just make the observation that I'm aware that these same issues are being currently presented in a number of cases. I know of the Robin Row case. I presume this is going to be argued in more than just the Robin Row case and presented. So it's mostly -- I think the initial issue is a legal issue.

The SAPD then asked to continue the stay of proceedings until the SAPD could arrange for different counsel for Abdullah. Additionally, the SAPD asked that the FCD be allowed to make any filings necessary to address the purported conflict of interest and expressed concerns about the propriety of the Office of the SAPD making any filings given its present conflict. The district court interjected and informed the SAPD that it would not let the FCD "in at this point." Focusing on the conflict between the federal and state post-conviction proceedings, the court reiterated its concerns, making clear that: "[u]nless somebody can convince me there is no conflict, they're not going to get appointed." At this point, the SAPD explained that this placed his office in a difficult position: "Your Honor, the dilemma I would have is our office can't make those filings because we have a clear conflict of interest."

The discussion then turned to procedure. The SAPD inquired whether the district court could take up the issue of whether there is a conflict with the new attorney. The district court explained that it "assume[d] the SAPD would screen people for conflicts[,]" and reiterated its position that it was "not allowing the [FCD] to come in unless you can show me there is no conflict, and I don't think you can do that." At an impasse, the court stayed the proceedings "until we have conflict-free counsel appointed."

In January 2023, the district court held its next status conference. The district court began by asking the SAPD if he had found conflict counsel for Abdullah. The SAPD again provided the name of Eric Montroy as lead counsel, who would appear pro hac vice, and offered the name of Greg Silvey, a licensed Idaho attorney, who would serve as local counsel. The district court quickly realized that Montroy was associated with the FCD, the same firm it had previously determined had a conflict of interest because it was representing Abdullah in his federal case.

[Judge Copsey]: Who is the attorney that's going to come in?

[SAPD]: Eric Montroy.

[Judge Copsey]: Montroy?

[SAPD]: Correct. M-o-n-t-r-o-y.

5

[Judge Copsey]: All right. And I assume Mr. Montroy will be here, or how does that work? Where is he located?

[SAPD]: He's currently in Philadelphia.

[Judge Copsey]: And he's not a federal --

[SAPD]: He is. He's handling the federal habeas of Mr. Abdullah, as well.

[Judge Copsey]: Well, I don't understand why that solves the problem that I'm concerned about, where -- and, you know, maybe I'm just very old. Okay? I'm going to be 76. So I'm getting up there, but -- and maybe I have a tendency to see conflicts of interest where they don't exist.

But the problem you have when you have a federal public defender whose law firm, so to speak, is now going to have to -- once this case is over, going to have to take on the federal habeas process, because it's his law firm, how do we avoid the very thing that happened early in this case?

That apparently I'm the only person who sees it as a conflict, but I'm concerned for Mr. Abdullah that you will have someone who -- what will happen is they're going to have to argue that "my brethren over here, Mr. Montroy, messed up in that State case."

So I'm not comfortable with Mr. Montroy coming in unless I get a full waiver, full waiver of every single potential conflict that Mr. Abdullah could possibly have in the future. So he would have to waive and indicate that he cannot complain that there was a conflict of interest at a later point because Mr. Montroy represented him here and his members of his same firm, the federal public -- capital defense firm represented him on the federal habeas case. It's the same problem.

And if I'm wrong -- and I have told you both, if I'm wrong, give me the case law that supports your contention that I'm wrong. You give me the case law, and you also provide a document from Mr. Abdullah that he has been duly advised of the potential of a conflict, and he waives any potential argument at later date that there was this conflict.

After further discussion, the district court indicated that the proceeding would have to wait until the SAPD was able to find someone who was conflict free. The SAPD reiterated his position that there was not a current conflict:

[SAPD]: Well, Your Honor, we believe there is no current conflict in the case. As the supreme court said in *Hall*, the mere possibility of a vague, unspecified possibility of a conflict does not rise to the level of a current conflict.

I'm not aware of any case law that requires the possibility or the chance that there may be a conflict at some point in the future is enough to disqualify an attorney from the case. If that were true, every defense attorney would not be able to take a case because there's a possibility they would have a conflict down the line.

6

[Judge Copsey]: No, that's ridiculous. In this case, Mr. Abdullah currently has a habeas case ongoing; correct?

[SAPD]: Correct.

[Judge Copsey]: And that's represented by the federal capital -- I can't remember. It's a big, long name. But it's essentially the same people that Mr. Montroy works for.

[The State]: Isn't it Montroy, himself?

[SAPD]: It's Montroy, himself, Your Honor.

[Judge Copsey]: Pardon?

[SAPD]: Mr. Montroy, himself, handles the federal habeas.

[Judge Copsey]: Okay.

[The State]: So it's not just --

[Judge Copsey]: It's not -- yes, it's the same person. I didn't realize that.

Then, to me, that really is a conflict, especially in this case, and here's why. If you look at the arguments being made that Mr. Durham posited, the arguments essentially are that he -- I'm trying to see if I can put this into words. Essentially, that because of the change -- or the alleged change, because I'm not so sure that I agree that this most recent case with the supreme court is a big change. And I personally -- having now read all these cases, I think there has been a huge misinterpretation by a lot of the defense counsel as to what actually is meant by the *Martinez* case[3] and some of these others. I just think they have misread them. And I think that's what the United States Supreme Court essentially says.

But, in essence, it's a legal argument that things should have happened in the state court that didn't happen. And so, especially with Mr. Montroy handling the federal habeas, I don't see how he can make the arguments that are necessary for Mr. Abdullah.

MR. FREDERICKSEN: Your Honor, I guess I fail to see where the conflict is. All of the claims that Mr. Durham raised are against the SAPD and trial counsel.

---

[3] In *Martinez v. Ryan,* the Supreme Court of the United States held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 566 U.S. 1, 9 (2012). A decade later, the Supreme Court clarified that "the equitable rule announced in *Martinez*" did not "dispense with [28 U.S.C.] § 2254(e)(2)'s narrow limits [for a federal court remedy] because a prisoner's state postconviction counsel negligently failed to develop the state-court record." *Shinn v. Ramirez*, 596 U.S. 366, 371 (2022).

There's nothing against the federal defenders. So there's no current actual conflict between the two cases.

THE COURT: Well, essentially, let me tell you what the fact of the matter is, that you start first -- the first hurdle that has to be overcome is the timeliness. And so, yeah, there are -- there is a conflict. And here's the thing. To me, the SAPD has long labored under a view that they are the attorney from the very beginning. And that's what got them into trouble in my case, that they were the attorney from the time of the trial when, in fact, they are not the attorney from the time of the trial. They are the attorney on appeal and on post-conviction. And that's very specific because if you look at the rule, the rule says you can't appoint somebody to represent someone on post-conviction who was the trial attorney. And so that's where I had problems with the SAPD from the very beginning. They really thought their role started at the time of trial. And we would see SAPD sitting in the courtroom, which is fine. But behind all that, they were also giving advice to trial counsel, which they shouldn't have been doing.

MR. FREDERICKSEN: Your Honor, I labor under no belief that the SAPD takes over a case at the time of trial. We're appointed at the moment that is found by the jury. At that point in time, we do take over a case.

THE COURT: Correct.

MR. FREDERICKSEN: Under 19-5906, if we identify a conflict of interest, then it's our obligation to identify conflict-free counsel. I understand Your Honor disagrees with that, but at this point in time –

THE COURT: No, I don't disagree with that, actually.

MR. FREDERICKSEN: With whether or not Mr. Montroy has a conflict.

THE COURT: I do.

MR. FREDERICKSEN: Once we make that finding, we pass the case on to you, and Your Honor could make a finding that there's conflict of interest and identify the specific conflict. But at this point in time, we don't see one and neither does Mr. Montroy's office.

THE COURT: Well, I don't think he gets to make that determination. . . .

After receiving input from the State, the SAPD and the district court were still at an impasse. The stalemate continued as the SAPD and the court then disagreed on who must identify the conflict. This status conference ultimately reached no resolution. Instead, the court ordered briefing on the matter.

The district court again took up the matter at a subsequent status conference in June 2023. However, the court decided there was no need for further argument, as everyone was still "entrenched" in their respective positions, and ruled from the bench without hearing further

argument. Relying on Idaho Code section 19-855 and agency regulations for the Idaho Public Defense Commission, the court concluded that Montroy did not meet the threshold qualifications to represent Abdullah. Accordingly, rather than appointing Montroy as lead counsel and Silvey as local counsel, the court appointed Silvey alone to represent Abdullah. The bench ruling was memorialized with a subsequent written order.

On July 23, 2023, the SAPD filed a verified petition for a writ of mandamus and a brief in support with this Court. Thereafter, on July 31, the SAPD also filed a motion to expedite or stay Abdullah's case. On August 2, 2023, this Court issued an order pursuant to I.A.R. 5(d), which granted the motion to expedite and stayed the proceedings before the district court. This Court also ordered Respondents to file a verified answer and permitted the SAPD to file a reply brief. Additionally, on August 4, 2023, the ACP filed a verified petition to intervene, which this Court conditionally granted. All of the briefing has been submitted and this Court heard oral argument on September 22, 2023.

## II. STANDING AND JUSTICIABILITY

This original action presents a threshold question of justiciability. Specifically, both the Respondents and the ACP challenge whether the SAPD has standing to bring this original action. For the reasons explained below, we conclude that the SAPD has standing to bring this original action.

When reviewing issues of standing, "Idaho has adopted the constitutionally based federal justiciability standard." *ABC Agra, LLC v. Critical Access Grp., Inc.*, 156 Idaho 781, 783, 331 P.3d 523, 525 (2014) (citing *Davidson v. Wright,* 143 Idaho 616, 620, 151 P.3d 812, 816 (2006)). "Under the traditional standing analysis, 'the plaintiff must show (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a "like[lihood]" that the injury "will be redressed by a favorable decision." ' " *Tucker v. State*, 162 Idaho 11, 19, 394 P.3d 54, 62 (2017) (alteration in original) (quoting *State v. Philip Morris, Inc.*, 158 Idaho 874, 881, 354 P.3d 187, 194 (2015)). We will address each element in turn.

### A. The SAPD has demonstrated an injury in fact.

This Court has repeatedly held that it is not enough to simply allege an injury, but that the injury must be distinct and palpable. *Gifford v. W. Ada Joint Sch. Dist. #2,* 169 Idaho 577, 584, 498 P.3d 1206, 1213 (2021); *Philip Morris, Inc.*, 158 Idaho at 881, 354 P.3d at 194; *Young v. City*

9

*of Ketchum*, 137 Idaho 102, 104, 44 P.3d 1157, 1159 (2002); *Miles v. Idaho Power Co.*, 116 Idaho 635, 641, 778 P.2d 757, 763 (1989). For an injury to be distinct and palpable, the petitioner's injury must differ from the injury sustained by other members of the public or group; it cannot be a generalized grievance. *See Miles*, 116 Idaho at 641, 778 P.2d at 763 (quoting *Warth v. Seldin*, 442 U.S. 490, 499 (1975)). "To satisfy the requirement of an injury in fact, one must 'allege or demonstrate' an injury that is ' "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." ' " *Reclaim Idaho v. Denney*, 169 Idaho 406, 422, 497 P.3d 160, 176 (2021) (quoting *Philip Morris, Inc.*, 158 Idaho at 881, 354 P.3d at 194). While a plaintiff may allege an injury, we have also explained that generalized allegations alone are insufficient: "mere allegations are not sufficient, and the party invoking the court's jurisdiction must demonstrate facts supporting this allegation." *Philip Morris, Inc.*, 158 Idaho at 882, 354 P.3d at 195. As we have explained: "[the] often repeated. . . 'allege or demonstrate' standard. . . is an incomplete statement of the requirements for standing. Consistent with the federal standard, *Young* also holds that standing 'requires a *showing* of a "distinct palpable injury" and "fairly traceable causal connection between the claimed injury and the challenged conduct." ' " *Id*. at 881, 354 P.3d at 194 (quoting *Young*, 137 Idaho at 104, 44 P.3d at 1159); *see Miles,* 116 Idaho at 639, 778 P.2d at 761).

In the context of attorney representation, Respondents cite this Court's decision in *Hepworth Holzer, LLP v. Fourth Judicial District Of State of Idaho*, 169 Idaho 387, 496 P.3d 873 (2021), for the proposition that "[s]tanding only focuses on **the party seeking** relief, not on the issue the party wishes to adjudicate." (Emphasis in original). Respondents read *Hepworth Holzer* to mean that "[t]his Court's standing analysis in *Hepworth Holzer* makes clear that the distinct and palpable injury in fact required for standing must pertain to the law firm's interest in the underlying action[.]" Thus, in Respondents' view, because the Office of the SAPD had already acknowledged that it had a conflict of interest that precluded it from representing Abdullah, "the SAPD was wholly unable to have 'invested time, money, and resources in its representation of' Abdullah."

Intervenor ACP agrees with Respondents and argues that the SAPD has not suffered an injury. The ACP maintains that the SAPD's reading of Idaho Code section 19-5906 is plainly wrong because "Idaho Code § 19-5906 conveys no authority to the SAPD to select or 'appoint' counsel." Instead, the ACP argues that this Court "need only follow 'the law as written' to conclude that the only responsibility and duty conferred to the SAPD by this statute is to 'arrange for counsel

10

for indigent defendants to be compensated out of the budget[.]' " The ACP further asserts that the SAPD's concerns over "possible future injury to its budget and ability to 'negotiate' fees" are merely an attempt to "turn hypothetical speculation into an 'injury' sufficient to convey standing."

The Respondents may be correct that "the SAPD was wholly unable to have 'invested time, money, and resources in its representation of' Abdullah" in this case (relying on *Hepworth Holzer*, 169 Idaho at 394, 496 P.3d at 880). However, while the injury to the law firm's investment in *Hepworth Holzer* was what satisfied the injury in fact requirement, it is not the only way a law firm can demonstrate injury. Notably, the SAPD is wearing at least two hats here: first, as the attorney of record for Abdullah and, second, as the statutorily prescribed public official mandated to "arrange" substitute counsel for Abdullah. I.C. § 19-5906 ("[T]he state appellate public defender *shall arrange for counsel for indigent defendants* to be compensated out of the budget of the state appellate public defender." (emphasis added)). Because the SAPD is attempting to carry out the duties of his office as set forth in the statute, the injury claimed by the SAPD is primarily based on that second hat.

The ACP argues that the SAPD misreads the statute. In the ACP's view, the statute does nothing more than specify who funds the arrangement for new counsel when the SAPD has a conflict. However, such a determination requires this Court to conduct a statutory interpretation of section 19-5906—an issue of first impression—which will also require us to address the merits of this case. While the ACP argues that there has been no injury because the SAPD's interpretation of the statute is incorrect, we have previously determined that "[a] party's standing to bring an action is an issue that is entirely separate from the issue of whether the party will prevail on the merits of the action." *Bagley v. Thomason*, 149 Idaho 799, 802, 241 P.3d 972, 975 (2010). The *allegation* of a distinct, palpable injury sufficiently satisfies the first prong of this Court's standing analysis to establish an injury in fact. *Gifford*, 169 Idaho at 583, 498 P.3d at 1212 ("Parents have *adequately alleged* an injury in fact for standing purposes." (emphasis added) (citing *Philip Morris, Inc.*, 158 Idaho at 881, 354 P.3d at 194)); *Reclaim Idaho*, 169 Idaho at 421–22, 497 P.3d at 175–76 (satisfying the requirement of an injury in fact requires a party to "allege or demonstrate" a concrete and particularized injury).

Here, the SAPD, in his capacity as a public official, alleges that the Respondents are preventing him from fulfilling his statutory duty to arrange counsel for Abdullah. Idaho Code section 19-5906 provides:

> APPOINTMENT OF ADDITIONAL COUNSEL: Should the state appellate public defender be unable to carry out the duties required in this chapter because of a conflict of interest or any other reason, the state appellate public defender shall arrange for counsel for indigent defendants to be compensated out of the budget of the state appellate public defender.

I.C. § 19-5906. The SAPD argues that this unambiguously vests the SAPD with the duty to arrange for counsel and "[i]n this instance, the district court plays no role." While the merits of the SAPD's claim will be addressed below, his central allegation is that this statutory provision charges the SAPD with the duty to "arrange for counsel," and he maintains that the district court impeded the exercise of that duty.

Accordingly, whether there is a distinct, palpable injury in this case turns on the allegation that the SAPD cannot discharge his duties under Idaho Code section 19-5906. In *Bedke v. Ellsworth*, we faced a similar issue in which we concluded two legislative officers had standing to bring an "institutional injury" claim on behalf of the respective bodies they represented. 168 Idaho 83, 93–94, 480 P.3d 121, 131–32 (2021). The Speaker of the House of Representatives and President Pro Tempore of the Senate alleged that they were "unable to discharge their statutorily created responsibility to allocate space on the first floor of the Capitol because the Treasurer refuse[d] to vacate her office." *Id.* at 94, 480 P.3d at 132. This was not a generalized injury, but "a specific and particularized grievance" concerning "a statutorily authorized duty delegated specifically to them[.]" *Id.* While the case before us does not concern the same type of "institutional injury," it similarly has the SAPD alleging that he cannot exercise his statutorily authorized duty—a duty that is specifically delegated to the SAPD in Idaho Code section 19-5906. As in *Bedke*, this is not a generalized grievance but a distinct and palpable injury that satisfies the first prong for standing.

**B. The SAPD has demonstrated a causal connection.**

A distinct, palpable injury alone is not sufficient to establish standing. The injury must also exhibit a sufficient "causal connection between the injury and the conduct complained of[.]" *Tucker*, 162 Idaho at 19, 394 P.3d at 62 (quoting *Philip Morris*, 158 Idaho at 881, 354 P.3d at 194).

12

In other words, there must be a "fairly traceable causal connection between the claimed injury and the challenged conduct." *Young*, 137 Idaho at 104, 44 P.3d at 1159 (citation omitted).

Respondents do not make an argument regarding causal connection, but the ACP does. It argues extensively that there is not a causal connection because the SAPD caused his own injury by putting forth the name of an attorney the judge had previously denied on conflict grounds. Further, the ACP characterizes the injury as the district court's appointment of Silvey, rather than the violation of the SAPD's statutory authority. Specifically, the ACP urges that "[t]he SAPD's own actions exacerbated an[] existing conflict and interfered with the appointment of conflict counsel to represent Abdullah in the pending Ada County case." Thus, the ACP maintains that "[t]he SAPD has caused the alleged injury in this case – not the decisions of the district court."

We do not agree with the ACP's analysis. Here, the alleged injury is the obstruction of the SAPD's statutory duty to arrange for conflict counsel. The conduct complained of was the district court's order, which allegedly disregarded the SAPD's role in arranging for conflict counsel and appointed an attorney of its own choosing. If the SAPD's alleged injury is valid, then it was directly caused by the court's order. Thus, there is a clear causal connection that satisfies the second prong of the standing analysis.

### C. The SAPD has demonstrated redressability.

The third prong of the standing analysis requires a showing of a "like[lihood]" that the injury "will be redressed by a favorable decision." *Tucker*, 162 Idaho at 19, 394 P.3d at 62 (quoting *Philip Morris*, 158 Idaho at 881, 354 P.3d at 194). We have explained that the "redressability element ensures that a court has the ability to order the relief sought, which must create a substantial likelihood of remedying the harms alleged." *Emps. Res. Mgmt. Co. v. Ronk*, 162 Idaho 774, 777, 405 P.3d 33, 36 (2017) (quoting *Tucker*, 162 Idaho at 24, 394 P.3d at 67). In other words, "[r]edressability requires a showing that 'a favorable decision is *likely* to redress [the] injury, not that a favorable decision will *inevitably* redress [the] injury.' " *Id.* at 777, 405 P.3d at 36 (all but first emphasis in original) (quoting *Tucker*, 162 Idaho at 24, 394 P.3d at 67). However, as this Court has also explained, "it cannot be only speculative that a favorable decision will redress the injury." *Id.* (quoting *Tucker*, 162 Idaho at 24, 394 P.3d at 67); (*citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)).

13

Here, the SAPD seeks a writ of mandamus similar to the relief granted in *Hepworth Holzer*. Should this Court render a favorable decision on the merits of this case, it would redress the injury to the SAPD by allowing the SAPD to fulfill his duty by furnishing substitute counsel for Abdullah. Accordingly, we conclude that the SAPD has demonstrated redressability. Therefore, because the SAPD has demonstrated the three elements of standing—an injury in fact, a causal connection, and redressability—we further conclude that the SAPD has satisfied the requirements of standing on its petition for a writ of mandamus. Accordingly, we will address the merits of the petition.

### III. THE SAPD'S STATUTORY AUTHORITY UNDER IDAHO CODE SECTION 19-5906

Having concluded that the SAPD has standing to seek a writ of mandamus in this original action, we now turn to the extent of his statutory authority to arrange for counsel. First, we will address the central question in this case: What is the scope of the SAPD's authority under Idaho Code section 19-5906? Second, we must determine whether this authority has been obstructed by the Respondents' actions. Finally, if we conclude that this authority has been obstructed by Respondents, we must next resolve whether the SAPD is entitled to a writ of mandamus or another extraordinary writ.

### A. The SAPD's authority to arrange for counsel under Idaho Code section 19-5906 allows it to substitute counsel without prior vetting by the trial court.

The State Appellate Public Defender Act provides that "the state appellate public defender, upon *appointment* by the court, shall provide representation for indigent defendants in the following cases. . . ." I.C. § 19-5905(1) (emphasis added). In such cases, the statute provides for two exceptions to the SAPD's representation. First, the SAPD has discretion to contract with private attorneys "when such contracts would conserve budgetary resources." I.C. § 19-5905(5). Second, the statute addresses what happens when the SAPD has a conflict of interest:

> Should the state appellate public defender be unable to carry out the duties required in this chapter because of a conflict of interest or any other reason, the state appellate public defender shall *arrange* for counsel for indigent defendants to be compensated out of the budget of the state appellate public defender.

I.C. § 19-5906 (emphasis added). Notably, the State Appellate Public Defender Act also confers on the SAPD "any and all other powers and duties necessary to carry out the purposes of this chapter." I.C. § 19-5905(6).

14

The SAPD suggests that when facing a conflict of interest, Idaho Code section 19-5906 authorizes the SAPD "to arrange for counsel" without involvement of the district court in the exercise of this duty as a state official. In other words, once the SAPD has been appointed by the district court, the SAPD can arrange for new counsel when needed without obtaining prior leave from the court. We agree with this interpretation. Our procedural rules are consistent with this framework—and consistent with the use of "arrange for" in light of our procedures for substituting counsel in death penalty cases.

Idaho Criminal Rule 44 explains that "[e]very defendant who is entitled to appointed counsel under law must have counsel assigned to represent the defendant at every stage of the proceeding from initial appearance before the magistrate or district court, unless the defendant waives such appointment." Thus, under Rule 44 there is an initial question of whether a defendant is entitled to appointed counsel. While uncontested here, Idaho Criminal Rule 44.2, which applies specifically to death penalty cases, makes clear that Abdullah is entitled to appointed counsel in a post-conviction case:

> **(a) Appointment of Attorney.** Immediately following the imposition of the death penalty, the district judge who sentenced the defendant must appoint at least two attorneys to represent the defendant for the purpose of seeking any post-conviction remedy referred to in Idaho Code § 19-2719(4) that the defendant may choose to seek. This appointment must be made in compliance with the standards in Rule 44.3, and the attorneys appointed must be someone other than counsel who represented the defendant prior to the imposition of the death penalty. . . .

I.C.R. 44.2(a). The Rule provides that immediately after a defendant has been sentenced to death, the district judge must *appoint* at least two attorneys. Importantly, the Rule mandates that the appointment must be made under the standards set forth in Idaho Criminal Rule 44.3.

Rule 44.3 explains "[t]he provisions for the *appointment* of counsel in this rule apply only in cases where (1) the defendant is needy, as defined in Idaho Code § 19-851 et seq., (2) counsel is not privately retained by or for the defendant, and (3) the death penalty may be or has been imposed on the defendant." I.C.R. 44.3(a) (emphasis added). The Rule also explains "attorney qualifications" and provides that "Attorneys *appointed* pursuant to Idaho Criminal Rules 44.2(a) and 44.3(b)(2) must be selected from the Idaho State Public Defense Commission Capital Defending Attorney Roster." I.C.R. 44.3(c) (emphasis added). Thus, if this were an appointment

15

under this Court's rules, the district court would be required to appoint an attorney from the Idaho State Public Defense Commission Capital Defending Attorney Roster.

However, this case doesn't concern the *appointment* of counsel; rather, it concerns the *replacement* of counsel. The SAPD had already been appointed to represent Abdullah. When the SAPD recognized its conflict, it sought to *substitute* a new attorney following the appointment of his office to represent the defendant. Idaho Criminal Rule 44.1 details the general procedure for withdrawal and substitution of counsel. Specifically, Rule 44.1(d) provides that substitution of counsel may take place without obtaining leave from the Court:

> **(d)  Substitution of Attorney.** The attorney of record of a party to an action may be changed or *a new attorney substituted by notice to the court* and to all parties signed by both the withdrawing attorney and the new attorney *without first obtaining leave of the court*. If a new attorney appears in an action, the action must proceed in all respects as though the new attorney of record had initially appeared for that party, unless the court finds good cause for delay of the proceedings.

I.C.R. 44.1(d) (emphasis added).[4] Thus, the SAPD can arrange for new counsel and file a notice of substitution, without the need for an "appointment" by the district court. We conclude that since this was a *substitution* of existing counsel and not an *appointment* of new counsel, the district court obstructed the exercise of the SAPD's statutory authority to arrange for substitute counsel for Abdullah.

The ACP argues that section 19-5906 simply addresses how substitute counsel is paid. If the statute were read this way, it would mean that the only arrangement the SAPD can make is for the payment of the substituted attorney. However, this reading is too narrow. The SAPD, as an appointed state official, has a duty under Idaho Code section 19-5906 to arrange for *and* compensate conflict counsel when a conflict is identified. As we observed in *Hall v. State*, 155 Idaho 610, 622, 315 P.3d 798, 810 (2013), "because no conflict has been identified, rendering the SAPD unable to carry out its representation of Hall, the SAPD's duty *to arrange for and*

---

[4] We note that the underlying proceeding in this case is a post-conviction proceeding and Idaho Criminal Rule 39(b) provides that "[t]he petition for post-conviction relief must be filed as a separate civil case and be processed under the Idaho Rules of Civil Procedure except as otherwise ordered by the trial court." However, even if we assume *arguendo* that the Idaho Rules of Civil Procedure govern the substitution of attorneys in this case, the result is the same: an attorney may be substituted without first obtaining leave from the trial court. *See* I.R.C.P. 11.3(a)(1) ("An attorney may be substituted by filing written notice with the court. The notice must be signed by both the new attorney and the withdrawing attorney.").

*compensate* conflict counsel under [current I.C. § 19-5906] has not been triggered." 155 Idaho 610, 622, 315 P.3d 798, 810 (2013) (emphasis added).

Notwithstanding our decision in *Hall*, we recognize that Idaho Code section 19-5906 is unclear or ambiguous. Thus, we must employ our tools of statutory construction. As we have observed:

> The objective of statutory interpretation is to derive the intent of the legislative body that adopted the act. Statutory interpretation begins with the literal language of the statute. Provisions should not be read in isolation, but must be interpreted in the context of the entire document. The statute should be considered as a whole, and words should be given their plain, usual, and ordinary meanings. It should be noted that the Court must give effect to all the words and provisions of the statute so that none will be void, superfluous, or redundant.

*Reclaim Idaho*, 169 Idaho at 427, 497 P.3d at 181 (quoting *In Re Doe*, 168 Idaho 511, 516, 484 P.3d 195, 200 (2021)).

In addition to the text of a statute, we have also held that "[w]hen the meaning of a statute is unclear, resort may be had to the legislative titles and statutory headings to aid in ascertaining legislative intent." *Nelson v. Evans*, 166 Idaho 815, 821, 464 P.3d 301, 307 (2020) (quoting *Burch v. Hearn*, 116 Idaho 956, 957, 782 P.2d 1238, 1239 (1989)). And while "the title of a statute and the heading of a section cannot limit the plain meaning of the text[,]" we have also noted that headings may be used to "shed light on some ambiguous word or phrase. They are but tools available for the resolution of a doubt." *Id*. at 821, 464 P.3d at 307 (quoting *Brotherhood of R.R. Trainmen v. Baltimore & O.R. Co.,* 331 U.S. 519, 528–29 (1947)). In resolving any confusion present in this case, the heading of section 19-5906 sheds considerable light on this provision. The heading, "APPOINTMENT OF ADDITIONAL COUNSEL[,]" supports the SAPD's reading of the statute. Indeed, if the legislature had intended this statute to only provide for the compensation of substitute counsel, the statute would have used "Compensation" instead of "Appointment."

"Additionally, statutes relating to the same subject matter—or those that are *in pari materia*—must be construed together." *Nelson*, 166 Idaho at 821, 464 P.3d at 307 (quoting *In re Adoption of Doe,* 156 Idaho 345, 350, 326 P.3d 347, 352 (2014)). Thus, "sometimes '[a] reading of the provision in the context of the entire chapter is [ ] enlightening.' " *Id.* (alterations in original) (quoting *New Phase Invs., LLC v. Jarvis,* 153 Idaho 207, 210, 280 P.3d 710, 713 (2012)). Indeed, "[p]rovisions should not be read in isolation, but must be interpreted in the context of the entire

17

document." *Reclaim Idaho*, 169 Idaho at 427, 497 P.3d at 181 (quoting *In Re Doe*, 168 Idaho at 516, 484 P.3d at 200). In this regard, we note that Idaho Code section 19-5905(5) provides that "[t]he state appellate public defender, in his discretion, may contract with private attorneys to provide representation on a case-by-case basis when such contracts would conserve budgetary resources." Thus, it is clear that the statute contemplates a broader role for the SAPD than that of a mere check writer. Again, it must be noted that section 19-5905(6) also broadly provides that "[t]he state appellate public defender shall have any and all other powers and duties necessary to carry out the purposes of this chapter."

Finally, if the SAPD's only duty is to make arrangements for compensating conflict counsel, the statute is silent as to who has the duty to locate and furnish the names of substitute counsel. Rather than read the statute in a way that renders it inoperable or incomplete, we conclude that the proper interpretation of the statute, as we suggested in *Hall*, is that the SAPD has the duty to "arrange" for substitute counsel who shall be compensated out of the SAPD's budget. Read the way the ACP argues, the Office of the SAPD would be left to foot the bill for a private attorney with whom it had no role in securing the attorney's services or negotiating the terms of the contract. This would run afoul of one of the purposes expressed in Idaho Code section 19-5902, which is to "reduce [the] burden [on the counties] and provide competent counsel, *but avoid paying high hourly rates* to independent counsel to represent indigent defendants in appellate proceedings, the legislature finds it necessary to create the office of the state appellate public defender." I.C. § 19-5902 (emphasis added); *see also* I.C. § 19-5905(5).

In consideration of all the above, and rather than read the statute in a way that renders it inoperable or incomplete, we conclude that the proper interpretation of the statute, as we suggested in *Hall*, is that the SAPD has the duty to arrange for substitute counsel who shall be compensated out of the SAPD's budget. Having concluded that the SAPD has both the authority and the duty under Idaho Code section 19-5906 to arrange for substitute counsel, the record is clear that the district court obstructed that duty by not allowing the SAPD to proceed with its substitution. Instead, it prohibited the SAPD from arranging for new counsel of its choice by removing the

18

SAPD from the case and appointing new lead counsel of its own choosing.[5] Therefore, we find that the district court obstructed the exercise of the SAPD's statutory duty and authority under Idaho Code section 19-5906. Instead of selecting new counsel of its own choosing, the district court should have permitted the substitution and then addressed any conflict-of-interest concerns with the newly substituted counsel of record.

### B. The SAPD is entitled to a Writ of Mandamus barring Respondents from obstructing its duties.

As we have said, "[e]ven if a party has standing, it must still establish that it has properly invoked this Court's jurisdiction." *The Associated Press v. Second Jud. Dist.*, 172 Idaho 113, ___, 529 P.3d 1259, 1266 (2023). "The Idaho Constitution vests this Court with 'original jurisdiction' to issue writs of mandamus and prohibition, 'and all writs necessary or proper to the complete exercise of its appellate jurisdiction.' " *Id.* (quoting Idaho Const. art. V, § 9). Importantly, "[o]nce this Court asserts its jurisdiction, it may issue writs of mandamus or prohibition." *Id.* (citing *Mead v. Arnell*, 117 Idaho 660, 663–64, 791 P.2d 410, 413–14 (1990)).

The SAPD seeks a writ of mandamus ordering the district court "to comply with the law and stop interfering with the SAPD's statutory authority to arrange for counsel for Mr. Abdullah." We have recently reiterated that "[a] writ of mandamus 'will lie if the officer against whom the writ is brought has a "clear legal duty" to perform the desired act, and if the act sought to be compelled is ministerial or executive in nature.' " *Idahoans for Open Primaries v. Labrador*, 172 Idaho 466, 490, 533 P.3d 1262, 1286 (2023) (quoting *Coeur d'Alene Tribe v. Denney*, 161 Idaho 508, 512, 387 P.3d 761, 765 (2015)). Further, "[i]f the act sought to be compelled of the public officer is ministerial, the Court must find the party seeking the writ has a clear legal right to have the act performed." *Id.* (quoting *Coeur d'Alene Tribe*, 161 Idaho at 512, 387 P.3d at 765).

---

[5] While the SAPD wanted Silvey to serve as the local supervisory attorney required under the pro hac vice rules, I.B.C.R. 227, it was clear that he wanted Montroy to serve as lead counsel on the case. Notably, the SAPD has explained that he initially approached Silvey about being lead counsel, but after discussing the possibility Silvey informed him that he did not have the "bandwidth" to take on a lead counsel role at that time. In a declaration filed with this Court on August 25, 2023, Silvey explained why he had denied the SAPD's invitation to serve as lead counsel:

> In winter of 2022 and spring of 2023, I was approached by Eric Fredericksen, the State Appellate Public Defender, about representing Mr. Abdullah in his successive petition for postconviction relief action pending in Ada County district court in case number CV-01-22—9520, but declined. I was unwilling and unavailable to take the case as lead counsel due to my workload and travel schedule but was willing to act as local counsel for a pro hac vice representation.

Additionally, "[t]his Court has held that mandamus is the proper remedy for one seeking to require a public officer to carry out a clearly mandated, non-discretionary ministerial act." *Coeur d'Alene Tribe*, 161 Idaho at 523, 387 P.3d at 776 (citing *Cowles Publ'g Co. v. Magistrate Court*, 118 Idaho 753, 760, 800 P.2d 640, 647 (1990)). Importantly, "[t]he party seeking the writ of mandamus has the burden of proving the absence of an adequate, plain, or speedy remedy in the ordinary course of law." *Coeur d'Alene Tribe*, 161 Idaho at 523, 387 P.3d at 776.

As we discussed above, the district court's order obstructed the SAPD's exercise of his statutory duty under Idaho Code section 19-5906 by (1) not allowing the SAPD to substitute counsel, (2) removing the SAPD, and (3) appointing new counsel of its choosing. This was done even though Idaho Code section 19-5906 endows the SAPD with the "clear legal duty" to arrange for substitute counsel, not the presiding judge. It must be stressed that the SAPD is legally entitled to perform this right of his office. And just as this Court may compel performance by a public official when a party has a clear legal right to have an act performed for its benefit, *Idahoans for Open Primaries*, 172 Idaho at 490, 533 P.3d at 1286, we can similarly compel performance to ensure a party can act in accordance with his or her statutory duty and legal authority. I.C. § 7-302 ("[A writ of mandamus] may be issued by the supreme court . . . to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station; or to compel the admission of a party *to the use and the enjoyment of a right or office to which he is entitled. . . .*" (emphasis added)).

As for the availability of a plain, speedy, and adequate remedy in the ordinary course of law for the SAPD to vindicate the injury to his authority as a public official, we conclude that the SAPD has shown he had no other recourse. The district court removed the SAPD from the case and forbade him from arranging for counsel of his own choosing to substitute into the case. Thus, there was no other available option but to file this original action. Even if the SAPD had attempted to file an appeal under Idaho Appellate Rule 12, he would have to somehow request a stay of the order on behalf of Abdullah, a person he no longer represented, and then attempt to bootstrap his former representation of Abdullah into an appeal aimed at vindicating the SAPD's authority. Such an approach is untenable and left the SAPD with no avenue other than pursuing a writ in an original action before this Court.

20

For these reasons, we conclude that a writ of mandamus is a proper remedy in the case. Accordingly, we will exercise our authority by issuing a writ of mandamus ordering the district court to vacate its order removing the SAPD and appointing Silvey as counsel for Abdullah in his post-conviction case. The SAPD will return to its status as attorney of record, but only for the purpose of arranging for substitute counsel.

### IV. AN ATTORNEY MAY APPEAR PRO HAC VICE IN A DEATH PENALTY CASE.

The district court also concluded that Montroy could not represent Abdullah because he was not qualified pursuant to Idaho Code section 19-855, which provides that "[n]o person may be given the primary responsibility of representing an indigent person unless he is licensed to practice law in this state and is otherwise competent to counsel and defend a person charged with a crime." Although the district court originally questioned whether a pro hac vice appointment could satisfy this statute, it did not expressly conclude that a pro hac vice appointment would not satisfy the requirement. Instead, the district court simply noted "I don't appoint pro [hac] vice," thereby preemptively barring Montroy's appointment. In this regard, the district court's interpretation and application of Idaho Code section 19-855 in the context of a pro hac vice admission separately interfered with the SAPD's exercise of his statutory authority. Therefore, we must address the legal question of whether a pro hac vice limited license satisfies the statutory requirement for Idaho Code section 19-855. For the reasons explained below, we conclude that it does.

The Idaho Bar Commission Rules have been promulgated by the Board of Commissioners of the Idaho State Bar and adopted by this Court. The rules set forth the "requirements, qualifications and procedures for admission to the practice of law in the State of Idaho and maintenance of membership in the Idaho State Bar." I.B.C.R. 101. The rules define the active practice of law as the "practice of law following admission to practice . . . as a licensed active member of a jurisdiction in which the Applicant is admitted . . . ." I.B.C.R. 200(a). The rules also define the "Admission Rules" as Rule 200 through Rule 229. *See* I.B.C.R. 200–29. Of those admission rules, Rule 227 provides for pro hac vice admission. I.B.C.R. 227.

A pro hac vice admission is by definition a "[t]emporary admission of an out-of-jurisdiction lawyer to practice before a court in a specified case or set of cases." *Admission: admission pro hac vice*, Black's Law Dictionary (11th ed. 2019); *Pro Hac Vice*, Black's Law Dictionary (11th ed.

21

2019) ("For this occasion or particular purpose. The phrase [usually] refers to a lawyer who has not been admitted to practice in a particular jurisdiction but who is admitted there temporarily for the purpose of conducting a particular case."). Rule 227 provides that "[u]pon order by the affected court and subject to the limitations below, an attorney who is not a member of the Bar or a resident of Idaho may be permitted to appear in an Idaho case if the attorney [meets the pro hac vice requirements]." I.B.C.R. 227(a). Thus, Rule 227 allows for an out-of-state attorney to be granted temporary admission to practice law in Idaho for a specific case.

Since an attorney admitted pro hac vice can practice as a licensed member of the Idaho Bar in a specific case, it follows that such an attorney can be deemed "licensed" as it pertains to that specific case. Importantly, if a qualified out-of-state attorney can be substituted to represent a non-indigent defendant in a capital case, there is no compelling reason why an indigent defendant should not have the same opportunity, if circumstances warrant. Aside from competency requirements, Idaho Code section 19-855 only requires that an attorney be "licensed to practice law in this state[.]" We see no reason to depart from this common procedure in the Idaho courts. Indeed, it does not appear that this practice has ever been questioned before. Thus, we hold that a competent, out-of-state attorney who has been properly admitted pro hac vice may be substituted to represent an indigent defendant in a criminal case as a temporarily licensed member of the State Bar of Idaho.

Once this matter returns to the district court, should the SAPD still deem it necessary to arrange for an out-of-state attorney to represent Abdullah, such counsel may seek pro hac vice admission pursuant to the standard requirements and procedures established in Idaho Bar Commission Rule 227. The district court at that time may rule on the motion in its discretion and must issue an order as provided in Rule 227(e) and (k).[6]

## V. REMOVAL OF THE DISTRICT JUDGE

Finally, the SAPD also seeks removal of the presiding judge, Judge Copsey, pursuant to this Court's decision in *Hepworth Holzer*. The SAPD does not make its disqualification claim on the basis that Judge Copsey is biased; instead, the SAPD relies on *Hepworth Holzer* and argues

---

[6] We recognize that subsection (k) is illustrative only of an order granting a pro hac vice admission. We note that any denial must additionally establish that the district court exercised its discretion to deny the motion for pro hac vice admission in compliance with the *Lunneborg* factors. *See Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

22

that she must be removed as a matter of course. In *Hepworth Holzer*, we concluded that there was nothing in the district court's reasoning or decision that established a claim of bias; however, we still ordered the administrative district judge to assign a new judge to the case. 169 Idaho at 400, 496 P.3d at 886. We recognized that "the district court [had become] a party in this extraordinary proceeding." *Id.* As a party, "[t]he district court has been represented by counsel and filed documents directly opposing [petitioner's position] – a position which this Court . . . generally adopted." *Id.* While we expressly limited the holding to the facts of that case, this case presents a similar situation to the unique facts of that case. However, it is not necessary for us to fit this case within the narrow holding of *Hepworth Holzer* because we conclude that the record demonstrates clear bias.

The record discloses that Judge Copsey, by her own statements, ascribed bad motives to the SAPD, openly questioned the ethics of the SAPD in exercising his duties as a state official, and ardently expressed her position on rulings she would have to now revisit in light of this Court's decision. Judge Copsey made it clear that she believed that the SAPD was acting in his own interest by seeking the appointment of Montroy. For example, Judge Copsey stated: "I'm also finding it is inappropriate for the SAPD to advocate for a specific attorney who has -- because of the conflict, who has the potential of investigating the SAPD's actions in previous litigation in this case." Judge Copsey also stated that "[i]t has become increasingly apparent that the SAPD does not represent Abdullah's interests and should not represent his interests. *It is actually representing [the SAPD's] own interest in picking that attorney.*" (Emphasis added). She characterized the motive behind the SAPD's defense of its authority to arrange for substitute counsel as "glaringly apparent" and that the SAPD was "advocat[ing]" for a particular attorney—clearly raising the specter that the SAPD was pushing for Montroy's entry into the case for some improper purpose.[7] The clear inference from Judge Copsey's statements is that she believes there is some form of collusion between the SAPD and Montroy. By making such a suggestion, Judge Copsey has personally called into question the ethics and integrity of both the SAPD and Montroy without any factual basis for doing so. Therefore, we must unavoidably conclude that she has shown demonstrable bias against Abdullah's current and potential future counsel.

---

[7] The specific reasons why the district court believed that the SAPD had an improper reason in arranging for Montroy and the FCD was never discussed by Judge Copsey or counsel with particular precision.

Additionally, Judge Copsey made it clear that "[u]nless somebody can convince me there is no conflict, they're not going to get appointed." She went on to state that perhaps she was "the only one" to see this conflict. Even further, Judge Copsey left no doubt that, even if Montroy satisfied the requirements for admission and could convince her that there was not a conflict, she would not appoint a pro hac vice attorney. She flatly told counsel: "I don't appoint pro [hac] vice." This suggests that under no circumstance would Judge Copsey approve of a pro hac vice application, even if the attorney met all of the qualifications. Such a position broadly runs afoul of the detailed, case-by-case analysis the trial court must undertake in exercising its discretion to approve or disapprove a pro hac vice application.

Ultimately, the record illustrates that an antagonistic relationship has developed between the SAPD, Montroy, and Judge Copsey, for which the SAPD likely shares some of the blame, and calls into question the propriety of Judge Copsey remaining as the presiding judge in the case. As this Court observed, "[i]n matters of judicial ethics, appearance and reality often converge as one." *Hepworth Holzer, LLP*, 169 Idaho at 400, 496 P.3d at 886 (citing *Liteky v. United States*, 510 U.S. 540, 565 (1994) (Kennedy, J., concurring)). Indeed, as Justice Kennedy noted in his concurring opinion, "justice must satisfy the appearance of justice." *Liteky*, 510 U.S. at 565 (citing *Offutt v. United States,* 348 U.S. 11, 14 (1954)).

The Idaho Constitution guarantees that "justice shall be administered without . . . prejudice." Idaho Const. art I, § 18. Indeed, "[i]t is axiomatic that '[a] fair trial in a fair tribunal is a basic requirement of due process.' " *State v. Shackelford*, 155 Idaho 454, 458–59, 314 P.3d 136, 140–41 (2013) (second alteration in original) (quoting *In re Murchison,* 349 U.S. 133, 136 (1955)). Importantly, Canon 2 of the Idaho Code of Judicial Conduct provides that "a judge shall perform the duties of judicial office impartially, competently, and diligently." Idaho Code Jud. Conduct Canon 2. Rule 2.3 of Canon 2 dictates that "a judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice." Idaho Code Jud. Conduct r. 2.3(A). Rule 2.11 of Canon 2 dictates that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned. . . ." Idaho Code Jud. Conduct r. 2.11(A). The comment to Rule 2.11 informs this reading, by explaining "[u]nder this Rule, a judge is disqualified whenever the judge's impartiality might reasonably be questioned. . . ." Idaho Code Jud. Conduct r. 2.11 cmt 1.

In *Hepworth Holzer*, we removed a presiding judge in a direct action for mandamus relief under narrow circumstances, even where bias had not been established. 169 Idaho at 400, 496 P.3d at 886. Here, having found that Judge Copsey has shown demonstrable bias, this case does not require us to rely on such narrow circumstances. Therefore, we conclude that a new district judge should be appointed to preside over this case. *See Beebe v. N. Idaho Day Surgery, LLC*, 171 Idaho 779, ___, 526 P.3d 650, 664 (2023) ("[T]he district court's comments crossed the line from constructive feedback to personal attacks, and exhibited clear bias against both attorneys. As a result, a new district court judge shall be assigned on remand."). Accordingly, we order the Administrative District Judge of the Fourth Judicial District to assign a new district judge to preside over Abdullah's post-conviction proceeding in *Abdullah v. State*, No. CV-01-22-9520 (D. Ct. Ada Cnty., Idaho 2022).

We note that the decision to remove the judge from the case was not an easy one. We recognize that a trial court has the duty to inquire into potential conflicts of interest and has authority to require a party to retain substitute counsel on a showing of good cause. Indeed, "a court's failure to make a proper inquiry after a defendant's timely objection will result in the automatic reversal of the defendant's conviction." *State v. Severson*, 147 Idaho 694, 703, 215 P.3d 414, 423 (2009) (first citing *Holloway v. Arkansas,* 435 U.S. 475, 488–89 (1978); then citing *Hamilton v. Ford*, 969 F.2d 1006, 1012 (11th Cir.1992); and then citing *United States v. Rodriguez,* 278 F.3d 486, 492 (5th Cir. 2002)). Thus, given the serious nature of this case, we do not fault the district court for raising the conflict issue *sua sponte*. Nevertheless, only the SAPD—and not the district court—has the authority to arrange for new counsel under the circumstances presented here. This should have been allowed to take place before the district court preemptively appointed another attorney for Abdullah of its own choosing. After the arrangement for substitute counsel has occurred, the district court may then exercise its authority to inquire into potential conflicts with the new attorney. If a conflict of interest is found, the district court should allow the SAPD to furnish another qualified and conflict-free attorney. Here, in addition to demonstrating bias, the district court did not permit the substitution of counsel to occur, did not allow the substitute counsel to be heard, and made no specific findings of fact to support a determination that a conflict of interest currently existed with substitute counsel. Accordingly, we will leave it to the newly appointed judge to address such issues with the newly substituted attorney, if it becomes necessary.

25

If a conflict exists, then pursuant to his duty under Idaho Code section 19-5906, the SAPD will again be required to arrange for new, conflict-free counsel.

In conclusion, we recognize that among the unresolved questions woven throughout this case is whether there is an actual conflict of interest in Montroy's representation of Abdullah. More specifically, there is a question of whether the same attorney or law firm should represent a criminal defendant in both a federal habeas case and a state post-conviction proceeding. The SAPD asserts that "the district court's concerns about a conflict arising from Mr. Montroy's—and his firm's—concurrent representation of Mr. Abdullah in the state post-conviction case and in the federal habeas proceedings, find no support in Idaho law." Even if there were a legitimate concern of a future conflict, the SAPD maintains that the mere potential for conflict does not prohibit representation. We have expressed no opinion on these questions. Such questions are by their nature extremely fact intensive and must be reviewed by the trial court on a case-by-case basis with the attorneys involved. Should Montroy be appointed, this is an issue that the new presiding judge may take up directly with him.

## VI. CONCLUSION

For the reasons explained above, the SAPD's petition for a writ of mandamus is granted. Accordingly, we order the following relief:

1. The district court's orders removing the SAPD as counsel of record and appointing Silvey as post-conviction counsel for Abdullah are vacated;

2. The SAPD is restored as attorney of record for Abdullah and may continue to serve in that capacity for the limited purpose of arranging for substitute counsel;

3. The Administrative District Judge for the Fourth Judicial District shall appoint a new district judge to preside over *Abdullah v. State*, No. CV-01-22-9520 (D. Ct. Ada Cnty., Idaho 2022); and

4. If the new judge has any concerns regarding whether Abdullah's new attorney has a conflict of interest, it shall address such concerns with that attorney.

Chief Justice BEVAN, Justices BRODY, STEGNER and ZAHN **CONCUR.**